**Adam BAXTER, Plaintiff-Appellant,**

**v.**

**SAVANNAH SUGAR REFINING CORPORATION, Defendant-Appellee.**

**No. 73–1039.**

United States Court of Appeals, Fifth Circuit.

June 5, 1974.

Rehearing Denied July 9, 1974.

---

Fletcher N. Farrington, Bobby L. Hill,
Savannah, Ga., Kenneth L. Johnson, Bal-

timore, Md., Jack Greenberg, Morris J. Baller, New York City, Robert Belton, Charlotte, N. C., for plaintiff-appellant.

John E. Simpson, Savannah, Ga., John L. Sapp, Atlanta, Ga., for defendant-appellee.

Before BROWN, Chief Judge, and GEWIN and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

This appeal emanates from the district court's judgment granting appellant Baxter and the class he represents partial injunctive relief prohibiting Savannah Sugar Refining Corporation's (hereinafter Savannah) discriminatory promotion practices.[1] Baxter based his right to affirmative relief on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. 1981 which forbid private racial discrimination in employment.[2] In the district court's opinion rendered on October 6, 1972, Baxter was permitted to represent all black employees at Savannah's refinery pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

Baxter presents three contentions for our review. First, it is alleged that the district court erred in denying his request for class-wide back pay on the asserted grounds of Savannah's alleged good faith actions taken subsequent to the filing of this lawsuit and additionally because Baxter had failed to prove that an award of back pay was necessary to make whole the class which had been subject to discrimination. Secondly, he contends that the district court erred in holding that he was not the victim of Savannah's discriminatory employment practices. Finally, Baxter asseverates that the lower court unduly limited, without apparent justification, its award of attorney's fees granted to Baxter's counsel. After a review of the facts disclosed by the record and applying the applicable employment discrimi-

nation principles to the facts, we conclude that Baxter's first and third contentions are meritorious. Accordingly, we remand this case to the district court for further proceedings consistent with this opinion.

## I

Savannah, a New York corporation, refines, distributes and sells cane sugar. It maintains its headquarters in Savannah, Georgia. Baxter and the class he represents are employed at Savannah's principal refinery in Port Wentworth, north of Savannah. Savannah has a history of hiring a large percentage of black employees at its refinery. Indeed, at all times relevant to this case, a majority of the workers at the refinery has been black. Baxter does not complain of the percentage of blacks hired at the refinery, but he does challenge its promotional policies toward black employees subsequent to their employment.

Savannah's refinery is divided into numerous functional departments. In turn, the various departments are further compartmentalized into many job classifications. Even though lines of progression do exist within the departments, transfers freely occur among them. Furthermore, promotions are not based strictly on considerations of seniority but more importantly promotions are granted or denied almost entirely upon a department supervisor's recommendations as to who is "best qualified" among those in the pool of potential promotees for the particular job involved.

The facts fully support Baxter's claim that Savannah has had a history —which has continued to the present time—of confining black employees to lower-paying, less-skilled positions within the refinery. The record demonstrates a classic example of consistent and continuous employment practices that have the impermissible consequence

---

1. *See* 350 F.Supp. 139 (S.D.Ga.1972). Savannah has not cross-appealed from the injunctive relief granted below.

2. Sanders v. Dobbs Houses, 431 F.2d 1097 (5th Cir. 1971).

of limited upward mobility of blacks seeking economic advancement through job promotions. In a rather paternalistic manner, Savannah confers, without prior notice, promotions within the refinery. The supervisors, who are almost all white, choose those employees whom they feel have the qualities and backgrounds needed for an open position. There are no objective job descriptions to aid or guide supervisors in their promotion selection. Without notice of job openings and the qualifications desired, blacks are totally dependent upon their white superiors for promotion and economic advancement.[3]

There is little dispute about the deleterious impact on black employees of Savannah's promotion system prior to the filing of Baxter's lawsuit in 1968. In 1965, Savannah's work force was divided into seventy job classifications of which sixty-seven classifications were segregated by race. During the period 1965 to 1968, blacks continued to be assigned to all black positions and when promoted, were advanced to higher positions traditionally held by blacks. Therefore, at least until 1968, the company made no attempt to remove its discriminatory employment policies and conform to the Act's proscriptions.

In early 1968, Savannah adopted a so-called "affirmative action program" in an apparent effort to alleviate its quondam misdeeds against blacks and possibly to blunt the impact of Baxter's lawsuit. Under this "program", blacks began receiving promotions to historically higher jobs held by blacks. Thus, during the period of 1968 through 1971, Savannah elevated 131 employees to higher positions of which 81 were black. The record establishes however, that most blacks were advanced to positions tradi-

tionally held by blacks. Moreover, it was not until 1971 that a black employee was promoted to a supervisory position which entailed direction of white employees. The refinery, on the other hand, did not undertake to improve its promotion practices by providing for objective guidelines and job descriptions which hopefully would have eradicated the subjectivity that had characterized its policies in the past.

The district court seems to have accorded same significance to the fact that the size of the refinery's work force had diminished in analyzing Savannah's promotion system and its impact on black employees.[4] Such a consideration, while perhaps germane where a discriminatee's challenge is to an employer's hiring practices, is of small relevance where the challenge is to an employer's promotion policies and the observed reduction in the work force occurs primarily in the lower paying black positions as in the instant case.[5] During a part of the relevant period under review here, the work force actually increased between 1965 through 1968 from 505 employees to 510. Although there was a decrease between 1968 to 1971, the evidence demonstrates that while only four positions held by whites were eliminated from the work force, over 42 positions held by blacks were terminated. Thus the reduction in the size of the work force can not account, in any significant manner, for the black employees' position at the refinery.

The trial court aptly observed the discriminatory consequence of Savannah's promotion policies. It stated:

> While black and white employees begin at the same rate of pay, Blacks ultimately fall behind the earning power of their white co-workers. Throughout the years from 1965 to

---

3. There can be no question about the impropriety of a promotional system dependent upon supervisory recommendations uncontrolled by clearly delineated and objective job criteria where the discriminatees have demonstrated a conclusive case of discriminatory job standards. Such a system is patently illegal under Title VII. See Pettway v. Amer-

ican Cast Iron Pipe Co., 494 F.2d 211 pp. 240–243 (5th Cir. 1974) [No. 73–1163, April 29, 1974] pp. 3244, 3298–3303.

4. 350 F.Supp. at 144.

5. See United States v. Jacksonville Terminal Co., 451 F.2d 418 (5th Cir. 1971).

1971, the income gap between black and white employees at defendant's plant has widened. In 1965, the average wage for white employees was $105.86 per week, while Blacks averaged only $92.23 per week. In 1968, white employees of the Company averaged earning $126.60 per week while Blacks averaged only $104.84. In 1971, the defendant's white production employees earned an average weekly wage of $156.94 while Blacks earned only $134.13. Black employees in segregated job classifications in 1971 earned $27.05 less on the average than Whites working in all white jobs. In 1965, the gap was $20.20. . . . . These data reflect that while defendant has recently achieved more dispersal of black employees into the higher wage levels, nevertheless the relative position of all black employees . . . has not improved. *It is obvious that of the 95 black employees promoted from 1965 until the date of trial, only a few were promoted into formerly all-white or integrated job classifications. The majority of these promotees remained in segregated job classifications.*[6]

The district court had no difficulty in discerning the cause of the difficulties of the black employees in the refinery. Savannah did not give notice of vacancies, job descriptions or qualifications desired for a higher position. Employees were selected for promotion by supervisors on the basis of those determined to be "best qualified." Accordingly, the court enjoined the use of supervisory recommendations as the criteria for promotion and required that detailed affirmative steps be taken to eliminate such past abuses.

■ We completely agree with the district court order requiring that af-

firmative steps be taken to eliminate Savannah's past discrimination in promotions. The record clearly demonstrates the injurious consequences of the employer's policies on black employees. Only one conclusion can be distilled from the evidence; blacks, as a class, were the victims of discriminatory employment practices forbidden by Title VII and § 1981. An overriding determinant for job advancement at the refinery was the race or color of the employees. With the factual backdrop enunciated, we proceed to discuss Baxter's contentions.

## II

■ The district court explicated two reasons for its denial of class-wide back pay. First, the court was impressed by the fact that Savannah had "acted in good faith and made a positive effort to eliminate pre-Act segregations practices."[7] Secondly, the court held that Baxter had "failed to adduce satisfactory proof that such relief is needed to make the class whole. There has been no proof of a significant number of members of the group possessing qualifications who have been damaged by discriminatory practices notwithstanding their qualifications for promotion."[8] It is our considered opinion that neither of the stated grounds is legally sufficient to support the denial of a back pay award under the facts disclosed by the record in this case.

■ It is now settled law in our circuit that good faith is not a defense to an action for class-wide back pay. In Johnson v. Goodyear Tire & Rubber Company,[9] this court held that an employer's allegedly good faith actions taken to vitiate the effects of its past practice of employment discrimination are not a defense to a claim for back pay

---

6. 350 F.Supp. at 144–145. (Emphasis added).

7. 350 F.Supp. at 146. Additionally, the court recited various observations about the relevant standing of the refinery's employment practices in comparison with other industries in the area. *Id.* However laudatory these practices and accomplishments may be, we

do not consider them determinative of Baxter's claim of employment discrimination.

8. *Id.* at 146.

9. 491 F.2d 1364 (5th Cir. 1974). The district court did not have the benefit of the holding in *Johnson* when it rendered its opinion.

when the class has established a prima facie case of discrimination. In reviewing the claim of good faith asserted by the employer, Goodyear, in *Johnson*, we observed:

First, Goodyear argues that it would be unjust to impose back pay upon it since the district court found that it has proceeded at all times subsequent to the Act to remedy its past discriminatory practices. Johnson strongly contests this finding of the court. We find it unnecessary to resolve this factual controversy since we hold as a matter of law that such a finding is totally irrelevant as a defense to a claim for back pay.

Goodyear's argument completely misconstrues the nature of a back pay award. The entire thrust of this contention is based on the premise that back pay is punishment for its misdeeds and thus the court in good conscience should consider the motive of the employer in imposing the "penalty." This proposition has been totally rejected by our court. . . . Our Circuit has been steadfast in its determination to insure that sufficient affirmative relief be provided to vindicate the rights guaranteed by Title VII. In short, back pay awards [seek not] to punish the employer but to economically elevate the victims to the status which is rightfully theirs.[10]

The *Johnson* holding is equally applicable to the instant case. Even assuming that Savannah has taken actions in good faith to dissipate its previous discriminatory conduct, such actions are of little consequence where, as the instant case reveals, economic loss has occurred in the past and discrimination presently continues which results in financial deprivation to a company's black employees. Whether an employer is beneficient or malevolent in implementing its employment practices, the same prohibited result adheres if they are discriminatory; economic loss for the class of discriminatees. In Title VII litigation, neither benign neglect nor activism will be judicially tolerated if the outcome of such practices is racially discriminatory and results in monetary loss.

■ Concerning the burden of proof imposed on the class of discriminatees, we think the district court acted prematurely in requiring individual proof of economic loss and committed error in mandating that an individual establish that he had the prerequisite "qualifications" for a higher position in the initial proceedings to ascertain the nature of employment practices. We reiterate, as the district court apparently recognized, that Baxter has established a prima facie case of class-wide discrimination resulting in severe economic disparities between the earning power of white and black employees at the refinery. Moreover, the evidence clearly evinced a promotion system which confined black employees to low paying black job classifications. In addition, even when promotions were given to blacks they were limited substantially to higher paying jobs formerly held by blacks. Therefore, there is a strong presumption that a number of the individual members of the class would have received promotions to better paying white positions if Savannah's promotion process had been based on merit.[11]

■ A Title VII class action suit presents a bifurcated burden of proof problem. Initially, it is incumbent on the *class* to establish that an employer's employment practices have resulted in cognizable deprivations to it as a class. At that juncture of the litigation, it is unnecessarily complicating and cumbersome to compel any particular discriminatee to prove class coverage by showing personal monetary loss. What is necessary to establish liability is evidence

---

10. 491 F.2d 1364, 1376 (footnotes omitted). *See also* Pettway v. American Cast Iron Pipe Co., 494 F.2d 211 pp. 251–263 (5th Cir. 174) [No. 73–1163, April 29, 1974] pp. 3244, 3317–3341.

11. *Compare* United States v. Jacksonville Terminal Co., 451 F.2d 418, 441 (5th Cir. 1971).

that the *class* of black employees has suffered from the policies and practices of the particular employer. Assuming that the class does establish invidious treatment, the court should then properly proceed to resolve whether a particular employee is in fact a member of the covered class, has suffered financial loss, and thus entitled to back pay or other appropriate relief.

As a further justification for denying back pay relief, the trial court also concluded that no member of the class had shown that he possessed the qualifications for a promotion. On the basis of this record, we find it difficult to discern just what qualifications the district court had in mind. Baxter's evidence demonstrated that promotions resulted only from supervisory recommendations based on esoteric standards never revealed to the discriminatees. It is hard to conceive how one can prove that he meets certain employment criteria when no standards have been delineated by the employer. It is obvious that the burden of proof, encompassing nebulous and indeterminate standards, was improperly imposed here.

■ Accordingly, it is now proper to proceed with individual determinations of class coverage to resolve the issue of personal economic loss. The *Johnson* case, *supra*, refers to many factors which must be considered in the complex determination of an individual's entitlement to back pay.[12] Unlike the *Johnson* case, however, Savannah has no clearly ascertainable job standards other than the equivocal "best qualified" criterion. Thus it may be appropriate for the court on remand to ascertain what qualifications the white employees possess who occupy the higher paying "white" classifications. Of course, only those qualifications possessed by white workers which are established by Savannah to be job related should be considered.

The evidence distilled from this process should provide a standard for determining whether an individual black worker was actually qualified for promotion under a true merit system. We do not purport to constrain the inquiry of the district court or to confine its consideration of other pertinent factors, if any, which may be developed by the evidence.

Obviously many factors will have to be considered in resolving which individual employees would have been promoted. There are 272 black employees at Savannah's plant. Each individual presents unique characteristics and qualities. Perhaps of some significance is the fact that although higher positions do become available at the refinery, it does have a lower turnover rate than is usually found in an industrial setting. Thus it is apparent that many black employees would have never received an advancement regardless of Savannah's policies. If this assumption is established as a fact by Savannah, then the district court might consider a black incumbent's accumulated seniority in determining which black employee would have been promoted from the available pool. While this tentative proposal is only meant as a suggestion, it does indicate the type of analysis which will be required to attain an equitable result from the factual milieu presented here.[13]

■ Hopefully through such analysis, it will be possible to determine which blacks would have been promoted under a racially neutral system based on merit and job qualifications. As previously noted, the entire system of promotions formerly utilized by the refinery was based on a supervisor's subjective judgment without the benefit of objective job descriptions. We think such a factual situation lends itself to the analysis concerning the burden of proof explicated in the *Johnson* opinion. Accordingly, on remand the initial bur-

12. Johnson v. Goodyear Tire & Rubber Co., 491 F.2d 1364, 1379–1380 (5th Cir. 1974).

13. For further suggestions which may possibly aid the parties on remand, *see* Davidson, "Back Pay" Awards Under Title VII of the Civil Rights Act of 1964, 26 Rutgers L.Rev. 741 (1973).

den will be on the individual discriminatee to show that he was available for promotion and possessed the general characteristics and qualifications which are shown by Savannah to be possessed by the higher paid white employees and are job related. Once this burden is met, the employer must demonstrate by clear and convincing evidence that any particular employee would have never been advanced because of that individual's particular lack of qualifications for a more difficult position or for other good and sufficient reasons such employee would never have been promoted. It is apparent that whether any particular individual would have been advanced under a color-blind system cannot now be determined with 100% certainty. The court on remand will have to deal with probabilities. Any substantial doubts created by this task must be resolved in favor of the discriminatee who has produced evidence to establish a prima facie case. The discriminatee is the innocent party in these circumstances.

### III

■■■ Next, we are confronted with the issue of whether the district court erred in holding that Baxter was not promoted to the position of (relief) boiler room operator because he was not qualified to perform the duties required by that higher paying job. Our standard of review for resolving this alleged error has been adequately enunciated:

> We review findings of fact in Title VII cases in the same manner as other fact findings of the trial court are reviewed. This Court may not set them aside unless it is able to conclude that such findings are "clearly erroneous."[14]

It is not our function to reverse a trial court's determination of the facts unless we can conclude that there are insufficient facts in the record to support its ultimate conclusions. A review of this record demonstrates that sufficient evidence was introduced from which the trial court could infer that Baxter was not qualified to participate in the training program leading to the position of boiler room operator (relief).

Baxter has been employed as an electrician's helper in the refinery's electric shop since July 1, 1957. On September 7, 1959, he was assigned added duties as a relief helper in the refinery's boiler room. The boiler room is the heart of Savannah's sugar refining operation. It generates the vital energies necessary for the sugar production process. Because of its critical function, Savannah is required to operate the boiler room generators on a 24-hour, seven-day-week basis. To provide for this extended operation, it is necessary to have relief workers who can replace the regular boiler room employees on weekends and during emergency situations.

There are two positions in the boiler room; operator (or foreman) and helper. Concomitantly, two relief positions are also needed. The district court noted the complex tasks which must be performed by an operator. This observation is fully supported by the record. Indeed, Savannah requires a six-month training program for the new operators in the boiler room. The court further found that the position of helper did not prepare one to assume the duties of operator because each position required substantially different skills.

The trial court further concluded that a mechanical background was necessary to assume the job of boiler room operator and that the men advanced to that position "were significantly better qualified and possessed superior mechanical backgrounds than [Baxter] for the job of foreman or relief foreman in the boiler room."[15] Significance was additionally placed on the fact that Baxter had received some unfavorable work ratings from his supervisors for infractions of

---

14. Smith v. Delta Airlines, Inc., 486 F.2d 512, 514 (5th Cir. 1973).

15. 350 F.Supp. at 143.

company rules and for failure to adequately perform his duties.[16]

In 1965, following the enactment of Title VII, Baxter requested a promotion to the relief operator's position from his current job as relief helper. In contravention of Baxter's request, the company promoted Joseph Brinson, a white employee, to the position of relief operator in November of that year. The company justified Brinson's appointment on the ground that he had superior educational and mechanical background compared to the other prospective promotees.[17] In December of 1965, the company assigned John Andrews, a white, to the position of relief operator (trainee). On January 1, 1966, Savannah promoted Euless Hodges, a white, to the regular operator's position. Hodges had performed for several years as relief operator prior to his appointment. Thereafter, Baxter filed his charge with the EEOC. Subsequently, the company assigned another white, Dennis Holiday to be a relief operator in April of 1967. Finally, in June of 1968, following the institution of this suit, Savannah assigned the first black man, Frank Williams, to the position of relief operator. The evidence shows that with the exception of Williams, all relief operators and regular operators have been white. All the helpers have been black.

In considering the treatment accorded Baxter by the company, we cannot ignore Savannah's history of racial discrimination and thus must review the actions taken against Baxter within this context. Furthermore, it is apparent that the company did not welcome Baxter's suit. In fact, the record shows that little concrete action was taken to remove the past discriminatory practices until Baxter's suit was filed. We can only conclude that this suit was the partial impetus for the company's various affirmative actions and could have possibly colored some of the negative ones taken against Baxter.

It is apparent from Baxter's testimony at trial, that his real grievance was that the company allegedly discriminated against him in not granting him the right to participate in the operator's training program. He readily admitted that he did not possess the skills necessary to perform the operator's jobs. However, his admission was based on the fact that he was never permitted to gain these skills from the training program which is required of all operators.

The primary justification for excluding Baxter from the training program was his lack of a mechanical background and poor attitude evidenced by various infractions of company rules. Pretermitting the issue of Baxter's attitude and work record following the institution of this suit, the evidence does support the trial court's conclusions that mechanical expertise and skills are a necessary job trait and qualification for the performance of the duties of relief operator in the boiler room. Those employees who have performed the duties of operator in the best and most efficient manner have possessed a mechani-

16. Specifically the court found:

> The plaintiff has been given written warnings on four occasions for failure to perform his work properly and for violation of plant rules. He has an unfavorable personnel record and what is considered a bad attitude toward his work, as evidenced by the testimony of numerous witnesses and his demeanor in the courtroom. He has been given the opportunity on three different occasions to transfer into the boiler room as a regular helper, but has refused the transfer on each occasion. Moreover, plaintiff does not have a mechanical background as do all the four men promoted to the position of boiler

> room foreman or trained as relief foreman since the effective date of the Act. Each of those promoted had significantly better qualifications than plaintiff. The Court finds that the defendant has not discriminated against the individual plaintiff because of his race in failing to promote him to the position of boiler room foreman or relief foreman.

350 F.Supp. at 143.

17. The record does not show Brinson's educational attainment but it does reveal that Brinson had formerly been a packaging department mechanic. In June of 1966, Brinson was given the regular operator's position.

cal background. Mechanical expertise is necessary to respond intelligently to the demands of the boiler room. The record reveals that Baxter had not gained this needed skill in his position as an electrician's helper and therefore could be properly excluded from consideration as a relief operator. Of course, our holding does not preclude proof from other blacks who do possess a mechanical background and other appropriate qualifications from proving that they were the victims of discrimination in being excluded from this predominantly all-white position on remand. Accordingly, that part of the trial court's judgment denying relief to Baxter is affirmed.[17a]

## IV

In view of the fact that it is necessary to remand this case for further proceedings by the district court, we deem it appropriate to set aside the award of attorney's fees made at trial in order to allow further consideration of that subject in the district court. The district court awarded $12,500 in attorney's fees to the four participating attorneys who represented Baxter in various stages of the litigation in the district court. The four attorneys claimed that they had expended over a substantial amount of time in preparing and trying the instant case. Based on the time claimed the award of $12,500 amounts to an average remuneration of approximately $22.50 an hour.

■ First, there appears to be no dispute as to the number of hours which were spent by counsel on Baxter's behalf. There is a suggestion that some of the work performed by counsel for Baxter was duplicitous because of a change in counsel during the prepara-

tion stages of the litigation. Other grounds are presented by Savannah to support the award. However, we have no way of knowing the underlying reason for limiting the award to $12,500 since the district court gave none. We are aware of the rule that an award of attorneys' fees is left to the sound discretion of the trial judge.[18] The silence of the district court prevents us from determining whether there was a proper exercise of discretion in the instant case.

■ It is obvious that additional work will be required of counsel upon remand. We believe a determination of adequate compensation should be made by the district court when the case is finally concluded. If conditions warrant, an interim award may be granted. There is evidence in the record which tends to support the claim that the award of $22.50 per hour is low.

Many equitable considerations are involved in awarding attorney's fees in a Title VII suit and for that reason we will not undertake to fix a rate of compensation in this opinion.[19] The district court should have before it information as to charges generally made by counsel for litigants in this type of controversy in the Southern District of Georgia. We would not suggest that the highest or the lowest rate should be awarded. Due to the nature of public rights being vindicated, the award should be in such an amount to insure that attorneys will undertake representation in this type of case.[20]

Affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

Affirmed in part and reversed and remanded in part.

---

17a. We wish to make clear the fact that our holding today as to the claim of Baxter with respect to the position of (relief) boiler room operator relates only to that position. If he is able to establish promotional discrimination in any other area of his employment, he may do so in accordance with the standards outlined in this opinion.

18. Weeks v. Southern Bell Telephone & Telegraph Co., 467 F.2d 95, 97 (5th Cir. 1972).

19. For an exhaustive list of the factors which a district court in the Fifth Circuit should consider in awarding attorneys' fees, see Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

20. See Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).