**Priscilla E. CHAVEZ, Plaintiff-Appellant,**

v.

**TEMPE UNION HIGH SCHOOL DISTRICT # 213, Elias Esquer, P. M. Fullenwider, John W. Trimble, H. Hood and J. Young, Members, Tempe Union High School District # 213 Board of Education, in their official capacities, William Cox, Principal of Marcos De Niza High School, Defendants-Appellees.**

No. 75–2427.

United States Court of Appeals, Ninth Circuit.

Dec. 5, 1977.

Theodore C. Jarvi (argued), Scottsdale, Ariz., for plaintiff-appellant.

John F. Day (argued), Phoenix, Ariz., for defendants-appellees.

Before CHAMBERS and WALLACE, Circuit Judges, and CRARY,* District Judge.

WALLACE, Circuit Judge:

Chavez brought suit under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1983 against the Tempe Union High School District (the district) and William Cox, principal of Marcos de Niza High School, alleging that they had denied her employment on the basis of her national origin and that the employment practices of the district were impermissibly discriminatory. Following a non-jury trial, the district judge concluded that Chavez' civil rights had not been violated and held in favor of the district and Cox. We affirm.

## I. *The Facts*

The district tentatively decided sometime before 1968 to open a new high school to be called Marcos de Niza. In 1968, Cox was selected as principal elect. During the next

* Honorable E. Avery Crary, United States District Judge, Central District of California, sitting by designation.

three years, Cox appeared at several faculty meetings, both district-wide and at individual schools, in order to publicize the anticipated opening of Marcos de Niza. At these meetings he announced that positions would be available at the new school and that teachers within the district were encouraged to apply.

Prior to the opening of Marcos de Niza in the fall of 1971, Cox received 52 applications from teachers within the district. From these applicants, Cox selected teachers and acting department heads. For acting chairperson of the language department, he selected Mrs. Janet Tone. Cox testified that over the course of the 1971–72 school year, Tone performed well in her position as acting department chairperson. Accordingly, he informed her on February 15, 1972, that she would be appointed as permanent chairperson of the department for the 1972–73 school year.

Much of the controversy in this case pertains to the circumstances under which Tone was appointed to be permanent head of the language department. First, prior to advising Tone that she would be language department chairperson for the 1972–73 school year, Cox did not advertise the availability of nor did he do any recruiting for that position. Second, at the time of her appointment, Tone did not meet the formal qualifications for department head, as stated in the District Policy Manual, nor would she meet those qualifications by the beginning of the 1972–73 school year.[1]

Sometime in 1971 or early 1972, Chavez, who was then employed by the district as a teacher at another high school, decided that she would like to be chairperson of the language department at Marcos de Niza. The evidence is in conflict as to when she actually applied for the position. Chavez testified that it occurred during a telephone conversation with Cox in March 1972. According to Cox, Chavez first applied during an April 13 meeting in his office. At that time, according to Cox, he told her that because he already had a department head, the position was not open.

Upon being denied the position of language department chairperson, Chavez filed a complaint with the Equal Employment Opportunity Commission and was issued a letter to sue, whereupon she brought suit against the school district and Cox. Following a non-jury trial, the district judge concluded as a matter of law that the district had not violated Chavez' civil rights. Rejecting Chavez' claim of overt discrimination, he made findings of fact to the effect that Chavez was not denied the position of language department chairperson because of her national origin; instead, she was denied the position because, at the time of her application, the position was already filled as a result of Tone's prior appointment. By implication, the court also held that at the time of Tone's appointment, the school district's employment practices were non-discriminatory and that the district was under no obligation to institute any different hiring practice. In addition to his rulings on the merits, the district judge also awarded costs to the district and Cox.

On appeal, Chavez raises two central contentions. First, she argues that the court's findings of fact concerning overt discrimination had insufficient support in the record. Second, she asserts that the court erred as a matter of law in its implied conclusion that the employment practices of the school district did not violate her civil rights. Chavez also argues that the district judge erred in his award of costs.

## II. Overt Discrimination

Overt discrimination on the basis of national origin may violate both Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. Our task is to determine whether

---

1. At the time Marcos de Niza opened, the formal qualifications for department chairperson included "[a] minimum of five (5) years teaching experience," and "[a] Masters Degree in the subject area [of the department] or an appropriate number of years of successful teaching experience." When she assumed the role of permanent chairperson, Tone did not have the requisite number of years of teaching experience, nor had she completed her Masters Degree. She had, however, completed a portion of the work for a Masters Degree.

Chavez has proven a violation of either statute.

## A. *Title VII*

■ In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court held that a complainant in a suit under Title VII of the Civil Rights Act of 1964 is required to carry the burden of proving a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. [1817] at 1824. The complainant may meet this burden by showing:

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.*[2] A showing of the four factors identified in *McDonnell Douglas* raises an inference of discriminatory motive, *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977), which is a critical factor where, as here, plaintiff alleges disparate treatment on the basis of race. *Id.* 431 U.S. at 335, 97 S.Ct. at 1854 n. 15.[3]

■ We note that these four elements assume the existence of a fifth: that the position in question had not already been filled before it was sought by the complainant. Necessarily, the failure to prove the existence of a job opening is a fatal defect in a prima facie case of overt discrimination. *Id.* 431 U.S. at 358, 97 S.Ct. at 1866 n. 44.[4] The trial court made findings of fact to the effect that at the time Chavez applied for the position of language department chairperson at Marcos de Niza the position was no longer available because of Tone's prior appointment. If we uphold these findings on appeal, Chavez' prima facie case fails.

■ In regard to the time of the hiring of Tone, the district judge found that:

> In February, 1972, Defendant Cox decided to appoint Janet Tone as department chairman for the following year and personally told her of the appointment in a meeting with her on February 15, 1972. His selections of all department chairmen were automatically approved up the line.

The testimony of Cox at trial and the statement of Tone in response to Chavez' interrogatories amply support the court's determination with regard to Cox's conversation with Tone on February 15, 1972.[5] There is also support for the finding concerning automatic board approval of Cox's decisions. The record shows that the school board had never rejected a hiring decision made by Cox. Thus, the court was not clearly erroneous in determining as a factual matter

2. The Court added that because the facts of Title VII cases will differ, this particular specification of prima facie proof "is not necessarily applicable in every respect to differing factual situations." *Id.* at 802 n. 13, 93 S.Ct. at 1824.

3. *See* note 7, *infra.*

4. The necessity for a showing of job availability follows from the purposes underlying the Civil Rights Act of 1964. In the employment area, the Act was meant to insure equality of opportunity rather than a guaranteed job for every member of a minority group. *McDonnell Douglas Corp. v. Green, supra*, 411 U.S. at 800–801, 93 S.Ct. 1817; *Griggs v. Duke Power Co.*, 401 U.S. 424, 429–31, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Thus, the Act demands only that minorities be given the same consideration for available positions as non-minorities; there is no requirement that employers release non-minority workers in order to make

way for minority applicants. Accordingly, when there is a charge of overt discrimination, a showing of a job vacancy is essential in order to establish a prima facie case.

5. Chavez argues that the position of permanent chairperson could not be considered filled, as a matter of law, because Tone did not meet the formal qualifications for that position. We disagree. It is a factual question whether or not a position has been filled. We have determined that Tone was told on February 15, 1972, that she would be the permanent chairperson of the language department for the 1972–73 school year. It is a separate issue whether the failure of the school district to follow the formal qualifications for permanent chairperson was discriminatory. This issue is discussed in part III *infra.*

that Cox's decisions were automatically approved.

In resolving the controversy concerning the time of Chavez' application, the district judge found as follows:

> Plaintiff Chavez applied for transfer to Marcos De Niza High School on May 15, 1972, as teacher and department chairman. At the time of this application, the position was filled by reason of prior appointment by Defendant Cox of Janet Tone as department chairman of the Foreign Language Department.

We find that the court was clearly erroneous as to the actual date of Chavez' application. In light of the district's informal application procedures,[6] Chavez' discussion with Cox on April 13, 1972, admitted by Cox, must be held to constitute an application. However, this does not undermine the court's finding with regard to the timing of the application in relation to Tone's appointment. The evidence in the record demonstrates that Chavez made no application to Cox, or anyone else authorized to accept applications, prior to the middle of March 1972. Tone was appointed as permanent chairperson on February 15, 1972. Thus the district judge's factual determination that at the time of Chavez' application, the position was already filled by reason of Tone's prior appointment was not clearly erroneous. Accordingly, we find that Chavez failed to prove that the position was available and thus failed to establish a prima facie case of overt discrimination under Title VII.

**B.** *Section 1983*

Chavez also brought this suit under 42 U.S.C. § 1983, alleging that by discrimina-

rily denying her employment, the district and Cox abridged her constitutional rights to due process and equal protection of the laws. The district court properly found that there was no merit in this claim.

The same factors that were critical to our decision on the Title VII claim also persuade us that the district court did not err in concluding that the district and Cox had no discriminatory purpose[7] in refusing to hire Chavez as permanent head of the language department. The supportable findings demonstrate that she was denied it because the position had already been filled at the time of her application. Thus, Chavez' section 1983 claim fails.

### III. *The Employment Practices of the District*

Chavez' second contention is that the employment practices of the school district were discriminatory and violated her civil rights. She asserts, in effect, that even if the position of language department head were not available at the time she applied for it, the employment practices which led to this result were themselves discriminatory. Once again, we must evaluate this claim in terms of both Title VII and section 1983.

### A. *Title VII*

On numerous occasions the Supreme Court has pointed out that in enacting Title VII of the Civil Rights Act of 1964, Congress "intended to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or

---

**6.** There is evidence in the record that district teachers could apply for a position at Marcos de Niza by submitting a letter to their principal, to the school superintendent or to Cox, or simply by speaking to Cox.

**7.** Whether she is proceeding under Title VII or section 1983, Chavez' charge of overt discriminatory treatment requires her to prove a discriminatory motive in the refusal of Cox and the district to hire her. *International Brotherhood of Teamsters v. United States, supra,* 431 U.S. at 335, 97 S.Ct. at 1866 n. 15. Chavez' attack on the hiring practices of the district, on

the other hand, may be construed as one alleging a discriminatory *impact.* When such an allegation is made under Title VII, no improper motive need be shown. *Id.; Washington v. Davis,* 426 U.S. 229, 246–47, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 422, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co., supra,* 401 U.S. at 432, 91 S.Ct. 849. With respect to the question whether such motive must be proved in section 1983 suits alleging discriminatory impact, *see* part III, *infra.*

national origin." *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 763, 96 S.Ct. 1251, 1263, 47 L.Ed.2d 444 (1976). *Accord, Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 800, 93 S.Ct. 1817; *Griggs v. Duke Power Co.,* 401 U.S. 424, 429–30, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Even employment practices carried out with no discriminatory intent may be illegal if they result in discrimination on the basis of race. *Id.* at 432, 91 S.Ct. 849. Thus, there is a legal basis for Chavez' attack upon the district's employment practices. The question before us is whether she has met her burden of proving that the practices complained of constituted discrimination in violation of Title VII. *General Electric Co. v. Gilbert,* 429 U.S. 125, 137 n. 14, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *McDonnell Douglas Corp. v. Green, supra,* 411 U.S. at 802, 93 S.Ct. 1817.

### 1. Advancement Procedures

■ We first consider the procedure whereby Cox advanced Tone from acting chairperson of the language department to permanent chairperson without advertising that the permanent position was available and without recruiting minorities. Although this procedure is non-discriminatory on its face, Title VII proscribes even facially neutral practices and procedures not justified by business necessity which perpetuate the effects of past discrimination. *Griggs v. Duke Power Co., supra,* 401 U.S. at 430–31, 91 S.Ct. 849. Chavez' complaints raise the question of whether the procedure employed was objectionable on these grounds. If an acting chairperson were previously selected in a discriminatory manner, automatically appointing her permanent chairperson without giving minorities an opportunity to apply for the position might well perpetuate the effects of past discrimination in violation of Title VII.[8]

Moreover, even if the district did not strictly enforce its policy of automatic advancement, the inability of minorities to learn about the availability of permanent positions as department head could permit a de facto policy of internal advancement, leading to the perpetuation of past discrimination in the selection of acting department heads. *Swint v. Pullman Standard,* 539 F.2d 77, 101–02 (5th Cir. 1976); *Rowe v. General Motors Corp.,* 457 F.2d 348, 358–59 (5th Cir. 1972); *Brown v. Gaston County Dyeing Machine Co.,* 457 F.2d 1377, 1383 (4th Cir.), *cert. denied,* 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972).

■ Here, however, the evidence points to the conclusion that there was no discrimination against Chavez in the selection of acting department heads. Thus, there was no past discrimination with regard to her which might be perpetuated by the advancement procedure at issue here.

Chavez was given a fair opportunity to apply to Marcos de Niza in time to be considered for the position of acting department chairperson. Through the series of announcements made by Cox prior to the opening of the school, the school board made efforts to inform all teachers within the district that positions would be available at Marcos de Niza and that they were encouraged to apply. Chavez, who was teaching within the district at the time of these announcements, simply failed to take advantage of the opportunity which was given to her.[9]

---

**8.** Such perpetuation of past discrimination might be shielded if it resulted from a bona fide seniority system. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). However, there is no seniority system involved in this case.

**9.** Chavez alleges that there were no announcements concerning the availability of chairmanships, only announcements as to "positions" at Marcos de Niza. We believe, however, that this was adequate to inform teachers that department head positions were available. Teachers could be expected to know that a new school would need department chairpersons as well as teachers. Furthermore, several teachers, in their letters of application, asked to be considered for the position of department chairperson. This is evidence that "positions"

Furthermore, if she had applied, there is no indication that Chavez would have been subject to discrimination in the actual selection of acting department heads. There were three Mexican-Americans who applied to Marcos de Niza prior to the opening of school. Of these, two requested to be department chairpersons and were appointed by Cox to be heads of their respective departments. One subsequently became assistant principal of the school. Based on these facts, there is no reason to believe that Cox would have impermissibly discriminated against Chavez in selecting an acting chairperson of the language department if she had also applied prior to the opening of school. Because Chavez had a fair opportunity to obtain a position as acting department head, the complained-of advancement procedure was not discriminatory as to her.[10]

### 2. The Departure From Policy Manual Standards

Chavez also charges that the failure of the district to follow its own standards concerning qualifications for department chairpersons was impermissibly discriminatory under Title VII. We disagree.

Chavez has not shown that the failure of the district to follow its own standards had

a disproportionately unfavorable impact on minorities. Indeed, as we have already seen, both Mexican-Americans who sought department head positions at Marcos de Niza were appointed to be the heads of their respective departments. This is striking evidence that the school's departure from policy manual standards did not result in the exclusion of minorities.

██ Nevertheless, Chavez asserts that the district was under an affirmative duty to impose pertinent, objective criteria for the hiring of personnel and to follow those criteria. In support of this proposition, she cites *Carey v. Greyhound Bus Co.,* 500 F.2d 1372 (5th Cir. 1974) and *Baxter v. Savannah Sugar Refining Corp.,* 495 F.2d 437 (5th Cir.), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974). But the question before us is not whether the district is under an affirmative duty to impose objective standards; it is whether the failure to impose and follow such standards is impermissibly discriminatory. Both *Carey* and *Baxter* were cases where the evidence raised an inference that there had been discrimination against minorities and that the lack of objective standards in hiring was an instrumental factor in this result. Here, however, we have already determined that the failure of the district to follow the

---

was interpreted by the teachers themselves as including the position of department head.

10. In a slightly different attack, Chavez asserts that the school district was under an affirmative obligation to advertise the availability of the permanent position as department head and to recruit minorities for that position. She further contends that the failure of the district to carry out this obligation resulted in her having to guess at the proper timing for an application, violating her civil rights.

By framing the issue in these terms, Chavez apparently seeks to broaden the court's inquiry into alleged past discriminatory practices of the district. She appears to argue that even if she and other teachers within the district were given a fair opportunity to obtain positions as acting chairpersons at Marcos de Niza, district hiring as a whole had previously been discriminatory. Accordingly, she contends the system of advancement at issue in this case, founded as it was upon recruitment among currently-

employed teachers, was discriminatory in that it did not include remedial measures for past district-wide discrimination.

We find that Chavez has no standing to raise this claim. In essence, she is attempting to raise the rights of hypothetical third parties who could not compete for department head positions at Marcos de Niza because they were not teachers in the district and had been excluded from teaching positions on discriminatory grounds. However, it is obvious that Chavez herself was a teacher within the district at the time of the department head selection and had suffered no discrimination in initial hiring. As she had suffered no discrimination in initial teacher hiring, she could not raise a claim premised on perpetuation of past discrimination in initial teacher hiring. *See East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977).

policy manual standards was not discriminatory.

We conclude that Chavez has failed to establish a prima facie case of discrimination under Title VII with regard to the district's departure from the policy manual standards.

B. *Section 1983*

 Neither the district's advancement policy nor its failure to adhere to its own policy manual standards gives Chavez a cause of action under section 1983. Because section 1983 incorporates by reference the terms of the Constitution itself,[11] it appears that an action under this statute—at least to the extent it relies upon the Equal Protection Clause of the Fourteenth Amendment—requires proof not only of discriminatory impact, but also of discriminatory intent as established by the Supreme Court in *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

Chavez has not met either of these requirements. Not only has she failed to show that the district's employment practices had a racially discriminatory impact, as explained above, but it is plain from the record that she has not demonstrated that there was a racially improper motive under-

lying those practices.[12] Thus, Chavez' section 1983 attack is doubly defective.

### IV. *Costs*

 The final issue we must decide is whether the district judge erred in awarding costs to the district and Cox. We hold that he did not.

Pursuant to Rule 54(d), Fed.R.Civ.P., the prevailing party is entitled to costs unless the court rules otherwise. Whether costs are awarded is a decision to be made by the district judge, and his decision will not be overturned unless he has abused his discretion. *K-2 Ski Co. v. Head Ski Co.,* 506 F.2d 471, 476–77 (9th Cir. 1974). In this case, Cox and the school district were the prevailing parties. We find that the district judge did not abuse his discretion.

AFFIRMED.

---

11. Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any *rights, privileges, or immunities secured by the Constitution* and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(Emphasis added).

12. It is clear that the actual motive behind the failure of the district to follow its own policy manual standards was not directed toward excluding Chavez in particular nor minorities in general. Instead, the district's departure from the policy manual requirements was intended to take account of the fact that department head positions could not be filled if the requirements were strictly enforced. The evidence indicates that Cox selected acting department

heads with the expectation that if they did a good job over the first year, they would be advanced to the position of permanent department head. Thus, in order to adhere to policy manual requirements, it would have been necessary to hire a teacher for every department who could meet the requirements for department chairperson by the end of the first year. Yet, the evidence indicates that this could not be done with the available pool of applicants.

At Marcos de Niza, it was not only Tone who, as department chairperson, failed to meet the policy manual qualifications. There were several other department heads who lacked those qualifications as well. There was no evidence that the district's departure from the policy manual requirements was a device tailored to exclude Chavez or minorities generally. Instead, it appears from the record that it was a reasonable means of assuring that Marcos de Niza would open on time with a full complement of personnel.