**Edward CURTIS et al., Plaintiffs,**

v.

**Webster VOSS et al., Defendants.**

**No. 76 C 388.**

United States District Court,
N. D. Illinois, E. D.

Dec. 23, 1976.

---

Edward Curtis, pro se, Peter J. Berman, Legal Assistance Foundation, Arthur Powers, Schiff, Hardin & Waite, Chicago, Ill., for plaintiffs.

Joseph Moscov, Joseph M. Cotugno, Ill. Dept. of Corrections, Chicago, for defendants.

· MEMORANDUM DECISION

MARSHALL, District Judge.

By their amended complaint, the plaintiffs brought this action on behalf of them-

selves and others similarly situated, to redress violations of their constitutional rights occasioned by guard brutality at Illinois' Stateville Correctional Center. The named plaintiffs seek monetary damages for themselves, and declaratory and injunctive relief for the class as a whole. The defendants are 24 correctional personnel, including 18 guards and 6 administrators.[1]

The complaint alleges that the defendant guards have repeatedly inflicted excessive, unreasonable, and unnecessary physical abuse upon the named plaintiffs and other members of their class, and that the defendant administrators knew or should have known of the brutality and have failed to develop reasonable and adequate means of prevention. Two motions are pending for decision: plaintiffs' motion to certify a class and defendants' motion to dismiss.

### I. The class motion

In their amended motion for class certification, the plaintiffs ask us to certify a class of "all present and future inmates of the Stateville Correctional Center." At the outset we note that recent United States Supreme Court dicta cautions the district courts against including as class members those whose rights may or will in the *future* be violated by the defendants' conduct. *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 1887 n. 3, 48 L.Ed.2d 478, bluntly called such class certifications erroneous. According to the Court's analysis, persons whose rights will be denied only in the future, are those whose rights by definition have yet to be denied by the defendants. If the defendants have as yet taken no action which infringes the rights of these persons, there is no claim over which a district court may

exercise jurisdiction. This dictum implies that a class definition may encompass only those persons who have already been injured by the defendants' conduct (or, in the case of a request for declaratory or injunctive relief, only those persons whose rights are immediately contested or threatened by the defendants' conduct) because only those persons' claims present a justiciable controversy.[2]

█ To a certain extent the problem of persons who may or will in the future become class members is semantic. Many class actions involve classes whose membership predictably fluctuates over the course of the litigation. The fact that class membership is fluid, changing as the case progresses, does not negate the suitability of the class action device. *Wallace v. McDonald,* 369 F.Supp. 180, 188 (E.D.N.Y. 1973). What is critical is that the class definition be sufficiently precise to enable the court to determine at any given time whether a particular individual qualifies as a class member. C. Wright & A. Miller, *Federal Practice and Procedure* § 1760 (1972). Consequently, the exclusion of an individual at the time the class is defined does not imply exclusion at the time judgment is entered. Moreover, from a pragmatic viewpoint, the district court is concerned with those who in the future may be class members only to the extent that at some point, their previously hypothetical grievance matures into a claim upon which the requested relief may be granted. When this occurs, the person qualifies as a present class member, even if the class definition is specifically limited to those who have already been injured or threatened with inju-

---

1. Plaintiffs seek monetary damages from all 18 guards and three of six administrators. They seek only declaratory and injunctive relief against the remaining three administrators: Sielaff, Rowe and Feconda. See Plaintiffs' Memo in Oppo. to Motion to Dismiss, at 4.

2. This question must be distinguished from the justiciability questions addressed by the Court in *O'Shea v. Littleton,* 414 U.S. 488, 493–99, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), and *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). In those cases the Court con-

sidered the substantive sufficiency of the named plaintiffs' allegations of threatened conduct by the defendants and found that the elements of a sufficient claim for injunctive relief were not stated. Here, assuming that the named plaintiffs state a claim on behalf of themselves and others who presently reside in Stateville which would merit injunctive relief, the question is whether justiciable claims can be presented in behalf of those who are not now Stateville residents and whose rights, therefore, are not presently threatened.

ry by the defendants' conduct. Since the future class members who actually suffer injury thereby become present class members eligible for relief, a definition encompassing future members is superfluous.

In light of this discussion, the class will be defined to include: all present inmates of the Stateville Correctional Center in Joliet, Illinois. Having defined the class, we must determine whether this class meets the four requirements of *Fed.R.Civ.P.* 23(a).

■ Plaintiffs have convincingly demonstrated numerosity. Their allegations of widespread guard brutality are supported by detailed descriptions of ten specific incidents. Their statistics indicate that Stateville's current inmate population numbers well over two thousand, with a considerable annual turnover. Taken together these allegations suggest that the class is so numerous that joinder is highly impracticable, especially as the defendants have submitted nothing which leads to the conclusion that the incidents described in the complaint were isolated events. Second, common questions of law are presented. Although the facts of each alleged beating will necessarily vary, common legal issues are whether the beatings violate the plaintiffs' constitutional rights and whether the administrators have failed to properly supervise their subordinates. Third, the claims of the named plaintiffs appear to be typical of the class they seek to represent, resting as they do upon a common legal theory. Finally, it appears that the named plaintiffs would effectively protect the interests of the class. Their attorneys are specialists at representing prisoners in class actions, and there is no suggestion that the named plaintiffs' interests are antagonistic to those of the unnamed class members. *MAHA v. HUD,* 69 F.R.D. 633, 640 (N.D.Ill.1976).

In addition to meeting the four requirements of Rule 23(a), the plaintiffs must show that their proposed class satisfies one of the three subsections of Rule 23(b). A class action is maintainable under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class" making appropriate

final declaratory or injunctive relief with respect to the class as a whole. Plaintiffs contend that the administrators have failed to perform their duties of supervision and that the guards have unnecessarily and vindictively abused the inmates. Should these allegations be proved, declaratory and injunctive relief would be appropriate.

Accordingly, the plaintiffs' motion to certify a class consisting of all present inmates of the Stateville Correctional Center is granted.

## II. The motion to dismiss

■ The defendants have moved to dismiss the claims against them pursuant to *Fed.R.Civ.P.* 12(b)(6). The defendant guards contend that the complaint fails to state a constitutional claim against them because the guards' conduct was unpremeditated, occasional, and the resulting physical injuries minimal. It is true that the federal court cannot vindicate every prisoner who is struck by a guard in the course of an altercation. *Foster v. Jacob,* 297 F.Supp. 299 (C.D.Cal.1969). But the unjustified and brutal beating of an inmate by a prison guard undeniably states a constitutional claim. *Patmore v. Carlson,* 392 F.Supp. 737 (E.D.Ill.1975). The gist of the plaintiffs' complaint is that the guards have engaged in a systematic pattern of grouping together to intentionally and maliciously beat the inmates at Stateville and that serious physical injuries have resulted. Under the liberal notice pleading rules of the federal courts, we must not dismiss these claims unless it is certain that the plaintiffs could prove no set of facts which would entitle them to relief. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Plaintiffs will be permitted an opportunity to adduce evidence to support their claims against the guards.

The defendant administrators' motion to dismiss is more problematic. Plaintiffs do not allege that the administrators participated in the beatings, or that they affirmatively demonstrated approval or tolerance of the guards' conduct. Rather, they allege

that the administrators knew or should have known of the guards' attacks on the inmates and nonetheless failed to prevent them. Phrasing the plaintiffs' claims in the strongest possible terms, the administrators had notice of the guards' practice of beating the inmates and sat upon their knowledge. Defendants contend that in the absence of allegations to the effect that the administrators participated in or consented to the attacks, no claim is stated. Moreover, in the event that we reject this argument and find that a claim is stated, the defendants urge that the doctrines of federalism and comity dictate that we abstain. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

The plaintiffs in *Rizzo* filed their complaint to redress violations of their constitutional rights resulting from police misconduct. The defendants were certain city officials, including the mayor, the city manager, the police commissioner, and two police supervisors, who were charged with encouraging, authorizing, or at the least, failing to take any action to prevent the alleged unconstitutional police conduct from recurring. None of the policemen allegedly involved in the incidents were joined as defendants. At 370–372, 96 S.Ct. at 604. After finding a pattern of frequent police violations of citizens' rights, the district court entered an order requiring the defendants to submit a comprehensive program for improving the handling of citizen complaints regarding police misconduct. *Id.* at 364–365, 96 S.Ct. at 601.

The Supreme Court reversed, holding that the district court erred when it "injected itself by injunctive decree into the internal disciplinary affairs of this state agency." *Id.* at 380, 96 S.Ct. at 609. The precise basis for this holding is somewhat unclear, preceded as it was by a discussion touching upon four problem areas the Court identified in the district court's decree. The Court's first concern was that the plaintiffs' allegations of threatened injury were so speculative and conjectural that they lacked the requisite personal stake to request the overhauling of police disciplinary procedures. Significantly, none of the plaintiffs cited a specific incident in which he was deprived of his rights in an encounter with a police officer. *Id.* at 370–372, 96 S.Ct. at 604. Next, the Court disputed the district court's finding of a pervasive pattern of frequent police violations of citizens' rights, implying that the lower court's factual determinations were unsupported. Nonetheless, the Court did not reverse the findings as clearly erroneous. After expressing disagreement with the finding of a pattern of police misconduct, the Court commented that the named defendants played no affirmative role in the violations of which the plaintiffs complained. *Id.* at 377–378, 96 S.Ct. at 607. Finally, iterating the general principle that equitable relief should be reserved for extraordinary circumstances, the Court indicated that federalism dictated against a grant of injunctive relief which would require the lower court to supervise the defendants' daily affairs. *Id.* at 377–380, 96 S.Ct. at 607–609.

■ Mindful that Supreme Court decisions are frequently drafted in anticipation of future cases, the facts and the procedural posture of the case before us provide a solid basis for distinguishing *Rizzo v. Goode.* Each of the ten plaintiffs here allege a specific incident of guard misconduct resulting in physical injury to the inmate. These allegations undeniably present a case or controversy in which the inmate has the requisite personal stake in the outcome of the litigation. The Court's second criticism of the *Rizzo* decree—that it was based upon a faulty factual determination of a pattern of police misconduct—cannot provide us with guidance when the issue we confront is whether the complaint states a claim. The plaintiffs here assert a persistent pattern of intentional and concerted action by the guards, and allege ten specific incidents to bolster their allegation of a pattern of misconduct. We must accept these allegations as true upon a motion to dismiss. Evidence which convincingly supports the pattern allegations may or may not be forthcoming at the trial on the merits. When we are faced with the task of weighing such evidence, the Court's discussion in

*Rizzo* may prove instructive. But the plaintiffs here, like the plaintiffs in *Rizzo,* must be afforded an opportunity to prove their claims.

The Court's last two criticisms of the *Rizzo* decree, however, appear to have greater relevance to the resolution of the issues raised by the motion to dismiss. The discussion in subsections II B and C of the opinion intimates that the Court is of the view that an administrator or supervisor must affirmatively take part in the challenged conduct before he can be charged with a constitutional violation, and that in any event, injunctive relief which entangles a district court in the supervision of the daily affairs of a state agency is improper. Careful analysis reveals, however, that the Court's commentary was largely prompted by the specific facts of that case, in particular, the Court's conviction that the record did not support the finding of a pattern of police misconduct. In the absence of a cognizable pattern which could be expected to come to the attention of those in a supervisory position, the claims against the supervisors were, as the Court characterized them, "amorphous." Moreover, accepting the delicate questions of federalism that are implicated by a grant of injunctive relief, the absence of a pattern which would propel the supervisors to take action is all the more critical. In short, if a pattern is missing, the foundation for the fashioning of meaningful relief against the supervisors disappears.

Given the Court's suggestion that the liability of persons in a supervisory position relates to the existence of a cognizable pattern of misconduct by their subordinates, dismissal of the administrators at this stage of the proceedings would be premature. Plaintiffs must be permitted to adduce evidence to support their allegations of a pattern of guard misconduct. Similarly, the question of the appropriateness of injunctive or other forms of relief should be postponed until the facts are determined.

Accordingly, the motion of the defendant administrators to dismiss is denied.