**LOCAL 194, RETAIL WHOLESALE AND DEPARTMENT STORE UNION; David Pelham; Roosevelt Shipp; Frank Herrera; and Lois G. Crane, Individually and on behalf of all other similarly situated, Plaintiffs,**

**and**

**Equal Employment Opportunity Commission, Intervening-Plaintiff,**

**v.**

**STANDARD BRANDS, INC., Defendant.**

**No. 74 C 0587.**

United States District Court, N. D. Illinois, E. D.

Dec. 6, 1979.

Irving Meyers, Meyers, Rothstein & Leon, Chicago, Ill., Thomas P. Stillman and Richard Sutter, EEOC, Chicago, Ill., for intervening-plaintiff.

Judson H. Miner, Charles Barnhill, Davis, Miner & Barnhill, Chicago, Ill., for Class.

Joseph F. Coyne, Robert Haythorne, Kirkland & Ellis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On March 1, 1974, the plaintiffs filed this employment discrimination action challenging "across-the-board" defendant Standard Brands' hiring practices and terms and conditions of employment. The complaint alleges discrimination based on race, national origin, and sex in violation of both Title VII, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981,[1] and seeks injunctive and declaratory relief, as well as back pay. Specifically, the plaintiffs allege that Standard Brands consistently has followed a policy of refusing to hire blacks, Spanish-surnamed individuals and females for management and office positions. The complaint further alleges discriminatory impact resulting from a statistical under-utilization of blacks in blue-collar entry-level positions vis-a-vis their availability in the general workforce pool. Black and Spanish-surnamed employees allege that Standard Brands has discriminated against them by using non job-related testing procedures to determine eligibility for mechanic-trainee jobs. The female plaintiffs allege that there has been a discriminatory policy of refusing to hire women for certain entry-level jobs and denying women the opportunity to transfer or progress to certain other positions. In addition, the female plaintiffs claim that Standard Brand discriminatorily has layed off women employees while retaining less senior male employees performing similar functions.[2]

The plaintiffs throughout the course of this litigation have sought to pursue the case as a class action. In opinions dated January 6 and March 10, 1978, Judge Grady certified a plaintiff class of all black and Spanish-surnamed males who have been or will be discriminated against in hiring, job assignment, promotion or transfer, or other terms and conditions of employment. At that time, however, Judge Grady reserved ruling on the motion to certify a female class because Lois Crane, the named representative for the asserted female class, had not alleged sufficient facts in her complaint to enable the court to determine whether she would be an adequate class representa-

---

1. Since § 1981 pertains only to discrimination based on race, *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 522 F.2d 1235, 1240 (7th Cir. 1975), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976), the claims of sex discrimination necessarily are based on Title VII.

2. The female plaintiff class also asserts a number of discriminatory policies with respect to terms and conditions of employment.

tive. Thereafter, Crane amended her complaint, and by an order of October 10, 1978, Judge Grady expanded the class to include all female employees who have been or will be subjected to the same genre of discrimination as the male employees.[3] In that same order, the court denied the defendant's motion for summary judgment on the claims asserted by Crane.

Now, as this case nears trial, five and one-half years after this litigation began, the defendant once more is before the Court challenging the certification of the class.[4] Defendant Standard Brands offers three arguments in support of its motion to amend the class certification. First, defendant argues that the female class must be decertified since discovery has shown that the named representative, Crane, cannot prevail on her individual claim. Second, defendant asserts that since the named plaintiffs all are employees of Standard Brands, they lack the capacity to represent nonemployees who currently are included within the class. On this basis, the defendant seeks to limit the class to present employees at Standard Brands. Third, the defendant seeks to amend the class certification ordered by Judge Grady by imposing time limitations on class membership.

### Decertification of the Female Class

Judge Grady's order of October 10 indicated that the female class was certified "subject to redefinition if further proceedings indicate that the class as currently defined is inappropriate in light of the evidence presented by the plaintiffs." *Local 194, et al. v. Standard Brands, Inc.*, 74 C 587 Slip Op. at 6 (N.D.Ill., October 10, 1978). The defendant argues that discovery conducted since the October 10 order makes it clear that Crane cannot prove that she has been discriminated against. Since Crane's personal claims may be resolved by granting summary judgment in favor of Standard Brands, the defendant further argues that Crane is not a member of, and thus cannot represent the interests of, the female class. There being no other named female plaintiffs in the case, the defendant concludes that no other party is capable of representing the interests of the female class. As a result, the defendant asks that the female class be decertified.

The primary premise of the defendant's theory is that the Court must grant summary judgment in its favor.[5] This is a premise, however, that the Court cannot accept. The essence of sex discrimination under Title VII is the application of different standards for men and women. *Carroll*

---

**3.** Judge Grady certified a class of all "black citizens, Spanish-surnamed citizens, and women citizens who:

1) Have applied or will apply for employment at defendant's Pershing Road facility, but have been or will be denied employment because of race, sex, or national origin; and
2) Have been, are, or will be employed at defendant's Pershing Road facility, but have been, or are being, or will be discriminated against (i) in their terms and conditions of employment, and/or (ii) in their job assignments, and/or (iii) in their transfer or promotion opportunities because of race, sex, or national origin."

*Local 194, Retail, Wholesale, and Department Store Union v. Standard Brands, Inc.*, 74–587, Slip Op. at 5–6 (N.D.Ill., October 10, 1978) (unpublished opinion).

**4.** The class certification issue has been contested at least three times before Judge Grady, and the plaintiffs vigorously urge that this Court, which received the case on random assignment from Judge Grady, refrain from indulging the defendant in a fourth bite at the proverbial apple. The Court is sympathetic to the plaintiffs' position. As is indicated below, however, many of the principles governing class certification in Title VII cases currently are in flux. The Court believes that its obligation to do justice forbids it to ignore the unfolding case law in this area. It is not anticipated, however, that the Court will recertify the class again in the instant cause.

**5.** In considering a motion for summary judgment under Fed.R.Civ.P. 56, the Court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Moutoux v. Gulling Auto Electric, Inc.*, 295 F.2d 573, 576 (7th Cir. 1961). The "party moving for summary judgment has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor." *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir. 1979).

v. Talman Federal Savings & Loan Association of Chicago, 604 F.2d 1028, 1033 (7th Cir. 1979); Sprogis v. United Air Lines, 444 F.2d 1194, 1198 (7th Cir.), cert. denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). Crane's answers to defendant's interrogatories suggest that she plans to introduce at trial evidence which she believes shows that Standard Brands consistently refused to hire women to perform certain jobs, and denied women an equal opportunity to bid for certain positions generally held by men. Thus, Crane alleges disparate treatment both to herself personally and to her as a member of the female class.

■ The portions of plaintiffs' answers to the interrogatories cited by Standard Brands do not indicate to the contrary. The defendant argues that because Crane bid on two particular jobs, there could be no discrimination on the basis of her failure to obtain those jobs. Crane's argument, however, is that the defendant discouraged women from bidding for certain jobs and prohibited them from obtaining certain positions. The fact that the female plaintiff unsuccessfully bid for a particular job by no means precludes a finding of discrimination.

■ Similarly, ·the defendant observes that Crane and five other women bid for the job of Permanent Grocery Line Operator, and that Crane was awarded the job. On this basis, the defendant argues that Crane's allegation of discrimination must fail. However, this argument misconceives the nature of Crane's contention. The fact that Crane obtained a particular position does not answer the more basic question of whether this was a "male" or "female" position. It is that question—whether certain jobs have been reserved exclusively for men—which will be critical in determining the existence of sex discrimination. The

defendant has offered no evidence that convinces this Court that the question no longer is a live issue in the case. Therefore, the motion for summary judgment as to Crane is denied. As a result, the motion to decertify the female class is denied as well. .

### Decertification of Persons Discriminatorily Refused Employment

It is undisputed that the individuals who are named plaintiffs in this litigation all are present employees of Standard Brands. On this basis,· the defendant argues that there is no representative with the capacity to represent adequately the interests ·of those persons who allegedly have been discriminatorily denied employment, and that all such individuals should be removed from the class. The plaintiffs, on the other hand, argue that since their complaint alleges "across-the-board" discrimination, it is unnecessary that the named representatives suffer each and every type of injury allegedly suffered by the class members. Alternatively plaintiffs allege that even if the individual plaintiffs lack capacity to represent those refused employment, the plaintiff union and the intervenor-plaintiff Equal Employment Opportunity Commission (EEOC) are qualified to represent that subclass.

#### A. Across-the-Board Theory

The Seventh Circuit has observed that because the Civil Rights Act of 1964 attacks class-based discrimination, 'it is particularly appropriate that suits to remedy violations of the Act be brought as class actions. Bowe v. Colgate Palmolive Company, 416 F.2d 711, 719–720 (7th Cir. 1969).[6] The use of the class action vehicle in Title VII litigation, however, raises difficult questions concerning compliance with Rule 23(a) of the Federal Rules of Civil Procedure.[7] In

---

6. Moreover, the Senate Committee which considered the 1972 amendments to Title VII agreed that Title VII litigation by its nature involves class complaints. S.Rep.No. 415, 92nd Cong., 1st Sess. 27 (1971).

7. Rule 23(a) provides:
   One or more members of a class may sue or be sued as representative parties on behalf of

all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of .the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

particular, efforts to certify broad classes of aggrieved employees as well as those persons refused employment often may be at odds with the Rule 23(a) requirements of commonality, typicality, and adequacy of representation.

A number of courts have eliminated this hurdle to class certification by adopting an "across-the-board" approach to Title VII class actions. In the first case to use this theory, *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir. 1969), the court permitted a discharged employee to represent a class alleging discrimination in all phases of employment. The court held that where the complaint constitutes an "across-the-board" attack on unequal employment practices, the named representative of the class need not have suffered every type of discrimination alleged by the class:

> While it is true, as the lower court points out, that there are different factual questions with regard to different employees, it is also true that the 'Damoclean threat of a racially discriminatory policy hangs over the racial class [and] is a question of fact common to all members of the class.'

417 F.2d at 1124. Thus, the court found this common thread of racial discrimination adequate to satisfy the commonality and typicality requirements of Rule 23(a). This view had been endorsed by a majority of courts of appeals and district courts. *See e. g., Senter v. General Motors Company*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir. 1975); *Barnett v. W. T. Grant Company*, 518 F.2d 543 (4th Cir. 1975); *Wetzel v. Liberty Mutual Insurance Company*, 508 F.2d 239 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Reed v. Arlington Hotel Company*, 476 F.2d 721 (8th Cir. 1973), *cert. denied*, 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1974).[8]

The decision in *East Texas Motor Freight v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 543 (1977), however, casts doubt on the continuing validity of the across-the-board approach. The named plaintiffs in the case, who allegedly were aggrieved by the defendant's discriminatory transfer policy, filed suit on behalf of all blacks and Mexican-Americans who had been subjected to across-the-board employment discrimination. The plaintiffs, however, failed to move for certification of the asserted class. At trial, the court found that the transfer policy was neutral, and that the named plaintiffs were not qualified to perform the jobs which they sought. Accordingly, the trial judge dismissed the class allegations of the complaint.

On appeal, the Court of Appeals for the Fifth Circuit reversed. The court held that the trial judge early on should have considered the issue of class certification, notwithstanding the failure of the plaintiffs to raise the issue. Observing that "the requirements of Rule 23(a) must be read liberally in the context of suits brought under Title VII and Section 1981," the court determined that the class should be certified. *Rodriguez v. East Texas Motor Freight*, 505 F.2d 40, 50–51 (5th Cir. 1974). The court then reached the merits of the class claim, finding that the employer's practices denied the class equal employment opportunities.

A unanimous Supreme Court reversed the Fifth Circuit ruling, holding that the named plaintiffs were inappropriate class representatives under Rule 23(a). The Court found that since the named plaintiffs had failed to prevail on their individual claims, and had stipulated that they personally had suffered no other discrimination, they were not members of the class they sought to represent. Moreover, the Court observed that the named plaintiffs' failure to move

---

**8.** The Seventh Circuit never has ruled on this theory expressly. In *Crockett v. Green*, 534 F.2d 715 (7th Cir. 1976), however, the court seemed to endorse implicitly the across-the-board theory. There, a black man who had completed an apprenticeship but was denied employment due to his lack of experience as a journeyman was allowed to represent a class of blacks who were denied employment because of their race, whether or not they had completed an apprenticeship. *Id.* at 717–718.

for class certification as well as the apparent conflict between the plaintiffs' demands and certain class requests suggested that the plaintiffs could not "fairly and adequately protect the interests of the class." 431 U.S. at 403–405, 97 S.Ct. at 1897.

Addressing more generally the question of class actions to remedy employment discrimination, the Court reiterated that class representatives must " 'possess the same interest and suffer the same injury' as the class members." 431 U.S. at 403, 97 S.Ct. at 1896. The Court noted:

> We are not unaware that suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs. Common questions of law or fact are typically present. But careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains nonetheless indispensable. The mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination.

431 U.S. at 405–406, 97 S.Ct. at 1898.

Inasmuch as *Rodriquez* made no explicit mention of the "across-the-board theory," a number of courts have held that *Rodriquez* did not intend to limit that approach. *See e. g. Satterwhite v. City of Greenville*, 578 F.2d 987, 993–994 n.8 (5th Cir. 1978) (en banc); *Beasley v. Griffin*, 81 F.R.D. 114, 116 (D.Mass.1979); *Wajda v. Penn Mutual Life Insurance Company*, 80 F.R.D. 303, 307–312 (E.D.Pa.1978); *Vuyanich v. Republic National Bank of Dallas*, 78 F.R.D. 352, 357 (N.D.Tex.1978). This line of cases reasons that *Rodriquez* turned upon the findings that the named plaintiffs were not members of the class asserted and that they were inadequate representatives within the meaning of Rule 23(a)(4). Thus,

> [g]iven that the 'across-the-board' approach is simply a judicial gloss on the commonality and typicality requirements of Rule 23, it is difficult to understand

how *Rodriquez* . . . could be taken as a rejection of that approach.

*Wajda v. Penn Mutual Life Insurance Company*, 80 F.R.D. at 308.

This interpretation of *Rodriguez*, however, fails to deal adequately with the Court's more general observations about adherence to the requirements of Rule 23. Although the facts of *Rodriguez* concern the requirements of class membership and adequacy of representation, this Court does not see how these factors can be divorced from the remainder of Rule 23(a). The goals underlying Rule 23(a) are twofold. The requirements of numerosity and commonality ensure that the class action device is the most judicially efficient mechanism for resolving the contested issues. On the other hand, class membership, commonality, typicality, and adequacy of representation all are designed to ensure that the interests of the absentee class members are protected. *See e. g., E.E.O.C. v. D. H. Holmes Company, Ltd.*, 556 F.2d 787, 795 (5th Cir.), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978). This latter goal is of particular importance in Rule 23(b)(2) class actions such as this one, since absentee class members do not have the option of disassociating themselves from the class action. By limiting the impact of *Rodriguez*, the courts' capacity to effectuate the purposes of Rule 23(a) would be diminished. The Court does not believe that *Rodriguez* contemplated the selective enforcement of the requirements of Rule 23(a).

Therefore, it is evident that the "across-the-board" theory must be reevaluated in light of *Rodriguez*. Under the relaxed application of Rule 23(a), commonality and typicality of claims generally have been satisfied by the inherent class characteristics of Title VII litigation. This characterization of racial discrimination as a group wrong suitable for classwide attack under Rule 23(a), however, creates a situation in which virtually any Title VII action could be eligible for class certification.[9] This re-

---

9. *See* Comment, *The Proper Scope of Representation in Title VII Class Actions: A Comment on East Texas Motor Freight System, Inc. v. Rodriguez*, 13 Harv.Civ. Rights—Civ.Lib.L. Rev. 175, 188 (1978).

sult would obtain irrespective of the lack of judicial economy that would result from the action or the divergence of the claims. This Court finds that implicit in *Rodriguez'* admonition that compliance with Rule 23(a) remains indispensable in Title VII actions is a rejection of the "across-the-board" theory as an interpretation of the general class action principles.

Moreover, the policy goals of Title VII cannot be invoked to justify noncompliance with Rule 23(a). It is true that the policy of nondiscrimination is entitled to the highest of priority, *Albemarle Paper Company v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), and that suits by private individuals play an important role in the vindication of that policy. Furthermore, it has been argued that liberal class certification fosters the public-oriented goals of Title VII by providing relief for class members who are reluctant to prosecute valid claims for fear of employer reprisal. *See e. g. Mack v. General Electric Company*, 329 F.Supp. 72, 75 (E.D.Pa.1971). The reasoning of *Rodriguez*, however, indicates that these benefits do not form the proper basis for class certification in the absence of compliance with Rule 23(a). In passing Title VII, the Congress created no express exemption from the terms of Rule 23(a); *Rodriguez* suggests that the federal courts refrain from creating implicit exceptions to the general class action rules.

■ On the basis of *Rodriguez*, then, this Court must address the propriety of the "across-the-board" class that has been certified.[10] The individuals who are named plaintiffs in this case allege that they have suffered personal discrimination as a result of the defendant's discriminatory policies with respect to job assignment, transfer and promotion, and other conditions of employment. None of these individuals, however, claim that they have endured discrimination stemming from the employer's hiring practices. As a result, the individual plaintiffs share no bond of common questions of fact or law with persons who might have been discriminatorily denied employment by Standard Brands. Furthermore, the individual plaintiffs' claims, which relate to alleged discrimination during employment, are not typical of the claims of persons who may have been denied employment for discriminatory reasons. This poses the threat of less than adequate protection of the claims of persons who have been denied employment. It may be that the interests of plaintiff employees will persuade them to litigate less vigorously the claims of those who seek the opportunity for employment. Thus, this Court joins the other tribunals which have held that an employee-plaintiff may not represent a class of persons challenging an employer's hiring practices. *See e. g. Scott v. University of Delaware*, 601 F.2d 76, 87 (3d Cir.), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979); *Hill v. Western Electric Company, Inc.*, 596 F.2d 99, 101–102 (4th Cir.), cert. denied, 444 U.S. 929, 100 S.Ct. 271, 62 L.Ed.2d 186 (1979); *Chavez v. Tempe Union High School District No. 213*, 565 F.2d 1087, 1094 n.10 (9th Cir. 1977); *Walker v. World Tire Corporation, Inc.*, 563 F.2d 918, 921–22 (8th Cir. 1977). Accordingly, the Court holds that the individual named plaintiffs may not represent those persons who allegedly have been discriminated with respect to hiring.[11]

10. As indicated in note 8, *supra, Crockett v. Green* provides indirect support for the proposition that the Seventh Circuit has adopted the across-the-board approach. To the extent that approach is at variance with *Rodriguez*, however, *Crockett* no longer remains a viable precedent. Thus, the Court is free—indeed, is compelled—to adopt the approach that best comports with *Rodriguez*.

11. Inasmuch as the named plaintiffs allege the same discrimination as the class members with respect to job assignment, transfer and promotion, and conditions and terms of employment, there is no question that they possess the capacity to represent the class under Rule 23(a). This renders it unnecessary for the Court to determine the full scope of the *Rodriguez* "same interest, same injury" standard. Rigorously construed, this language could require that the claims of class representatives mirror those of the class members. On the other hand, several courts have singled out hiring

### B. *The Union and EEOC as Class Representatives*

As a result of this holding, the Court must reach the question of whether these alleged victims of hiring discrimination nonetheless may be represented by the union or the EEOC. In an earlier appeal concerning this case, the Seventh Circuit held that the plaintiff union "may represent those of its members it seeks to represent in this action." *Local 194, Retail, Wholesale & Department Store Union v. Standard Brands*, 540 F.2d 864, 867 (7th Cir. 1976). The court therein also held that organizational suits were not bound by the rigid requirements of Rule 23. *Id.* On this basis, the plaintiffs argue that the union may represent the class of persons who allegedly have been discriminatorily refused employment.

■ The Seventh Circuit opinion, however, held that the union could represent its *members* in this litigation. As noted by Judge Grady, these members consist of the employer's production and maintenance workers. *Local 194, Retail, Wholesale & Department Store Union v. Standard Brands*, 74–587, Slip Op. at 1 (N.D.Ill., January 6, 1978) (unpublished opinion). Thus, the plaintiffs' argument must fail for the simple reason that persons who have been denied employment would not ordinarily be members of the union.[12]

The capacity of the EEOC to represent a class of persons who allegedly have been discriminated against in hiring presents a more difficult question. When the EEOC intervenes in a lawsuit pursuant to § 706, 42 U.S.C. § 2000e–5, the agency no doubt seeks to vindicate the broad public policy

goals that underlie Title VII. On this basis, the plaintiffs argue that Rule 23(a) should be inapplicable to the EEOC, citing *E.E.O.C. v. General Telephone Company of the Northwest, Inc.*, 599 F.2d 322 (9th Cir. 1979). However, all Title VII suits, whether brought by private individuals or by the EEOC, further the policy goals of Title VII by striking at discriminatory employment practices.[13] In *Rodriguez*, as discussed above, the Supreme Court observed that adherence to the general class actions rules remains indispensable in Title VII litigation. The Court finds no justification for distinguishing between private actions and EEOC actions under § 706 under the *Rodriguez* rule.

The cases which have exempted EEOC actions under § 706 from the requirements of Rule 23(a) rely on two arguments to support their approach. First, they assert that neither Rule 23 nor Title VII expressly provides that EEOC actions must comply with the general class actions rules. *General Telephone Company*, 599 F.2d at 327–330. This position, however, erroneously alters the applicable presumption. In the absence of evidence to the contrary, it normally is presumed that actions which seek to proceed on a classwide basis must comport with the requirements of Rule 23(a). Fed. R.Civ.P. 1 ("These rules govern . . . all suits of a civil nature . . . at law or in equity . . . ."). Indeed, Rule 81, which exempts a number of substantive actions from the requirements of the Federal Rules of Civil Procedure, makes no mention of § 706 actions brought by the EEOC. Nor do the express terms of Title VII itself provide for an exception to the require-

---

claims as being particularly unsuited for prosecution by class representatives who do not allege hiring discrimination. Compare *Scott v. University of Delaware*, 601 F.2d 76, 87 n.21 (3d Cir.), *cert. denied*, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979), and *Wetzel v. Liberty Mutual Insurance Company*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Senter v. General Motors Company*, 532 F.2d 511, 523 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976), and *EEOC v. De-*

*troit Edison Company*, 515 F.2d 301 (6th Cir. 1975).

12. The Court also observes that *Rodriguez* casts into question the union exemption from compliance with Rule 23(a) in § 706 suits under Title VII.

13. In this regard, it bears noting that § 706 provides the statutory authorization for both private and EEOC lawsuits under Title VII.

ments of Rule 23(a).[14] This argument, therefore, provides no basis for permitting the EEOC to avoid the mandate of *Rodriguez* with respect to Rule 23(a). *E.E.O.C. v. D. H. Holmes, Ltd.*, 556 F.2d 787, 794–795 (5th Cir. 1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978).[15]

Second, the opinions exempting the EEOC from the requirements of Rule 23(a) have analogized § 706 actions to "pattern and practice" suits brought by the agency under § 707, 42 U.S.C. § 2000e–6. Since Rule 23(a) generally has not been applied to § 707 suits, "it would be illogical to apply a different rule with respect to § 706 actions 'in view of the seemingly identical nature of the two sections.'" *General Telephone Company*, 599 F.2d at 331.

This view glosses over a number of important distinctions between § 706 and § 707 proceedings. Section 707 suits are the result of independently-initiated EEOC investigations. Although the EEOC may seek individual remedies in § 707 actions, the primary purpose of the suit is to vindicate the public interest in Title VII policy. Section 706 suits, on the other hand, are triggered by individual complaints filed with the EEOC. When the EEOC files an action under § 706, it functions "as a vehicle for conducting litigation on behalf of private parties . . ." *Occidental Life Insurance Company of California v. E.E.O.C.*, 432 U.S. 355, 368, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). Any public benefit that accrues from such litigation is incidental.

Moreover, exemption from Rule 23(a) makes sense in the context of pattern and practice suits under § 707 for the reason that those suits do not proceed in the same fashion as the normal class action. In pattern and practice suits, "the question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 361, 97 S.Ct. 1843, 1868, 52 L.Ed.2d 396 (1977). At that time, individual relief may be awarded if the EEOC can show that individuals were potential victims of the proven discrimination. *Id.* In essence, this technique is a mass application of collateral estoppel by the government on behalf of victims of discrimination; a judgment is obtained against the employer, and parties entitled to enforce that judgment are granted relief. Class actions, however, proceed on the basis of an *a priori* determination of individuals who will be entitled to relief if the employer's liability ultimately is proven.[16] In this context, *Rodriguez* held that class actions must comport with the requirements of Rule 23(a). Section 707 does not persuade this Court that a different rule should apply merely because the EEOC is the named plaintiff in a § 706 action.

Therefore, the Court finds that the EEOC must satisfy the requirements of

---

14. As observed in *E.E.O.C. v. D. H. Holmes Co., Ltd.*, 556 F.2d 787, 795 (5th Cir. 1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978), "Congress knows how to set up federal actions governed by systems of procedure other than the Federal Rules of Civil Procedure." In support of this proposition, the court cited the 1973 Amendments to the Bankruptcy Act, which provide for a special procedural scheme in bankruptcy proceedings.

15. The court in *Holmes* further concluded that the legislative history of Title VII suggests that Congress intended Title VII to be governed by normal class action rules. 556 F.2d at 794–795. *General Telephone Company*, on the other hand, concluded that this same legislative history did not "manifest a Congressional intent that an action by the EEOC requires a compliance with Rule 23." 599 F.2d at 328–330. As-

suming *arguendo* that the *General Telephone Company* view of the legislative history is correct, this still provides inadequate justification for exempting the EEOC from Rule 23(a). As stated above, the usual presumption is that all civil actions are subject to the Federal Rules of Civil Procedure. A neutral reading of the legislative history of Title VII is insufficient to defeat this presumption.

16. *See* Fed.R.Civ.P. 23(c)(1): "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. . . ." *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) (determination of class certification should precede a determination of the merits of the action); *Vickers v. Trainor*, 546 F.2d 739, 747 (7th Cir. 1976).

Rule 23(a) in order to qualify as a class representative in a § 706 class action. *See e. g. E.E.O.C. v. D. H. Holmes, Ltd.*, 556 F.2d 787 (5th Cir. 1977), *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978); *E.E.O.C. v. Page Engineering Company*, 17 FEP Cases 1638 (N.D.Ill.1978).[17] The Court agrees with the reasoning of *D. H. Holmes* that the EEOC generally will satisfy the requirements of class membership[18] and adequacy of representation.[19] With respect to numerosity, commonality, and typicality, however, the Court believes that the EEOC can satisfy Rule 23(a) only to the extent that the private individual whose interest the agency seeks to represent could comply with the rule. In this case, the Court already has held that the individual plaintiffs are ineligible to represent those persons allegedly discriminated in hiring for failure to satisfy the commonality and typicality elements of Rule 23(a). Since the EEOC stands "in the shoes" of the individual complainant, the agency lacks the capacity to represent the class of hiring discriminatees as well.[20]

**17.** The Fifth Circuit in *Holmes* and the Ninth Circuit in *General Telephone Company* are the only federal courts of appeals to address this issue. The federal district courts have been split. For a listing of these various opinions, *see General Telephone Company*, 599 F.2d at 331 n.19. EEOC's brief on the issue of compliance with Rule 23(a) argues that the Fifth Circuit opinion in *Marshall v. Sun Oil Company*, 605 F.2d 1331 (5th Cir., November 5, 1979), represents a rejection of the *Holmes* reasoning that EEOC suits under § 706 implicate essentially private interests. The *Sun Oil* opinion, however, addressed the question of the EEOC's role with respect to the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. In that context, the court found that the agency is "more than a mere proxy for each victim of age discrimination. The [agency], therefore, is not in the shoes of 121 employees." *Id.* at 1335. In support, the court analogized to the reasoning in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336 n.16, 97 S.Ct. 1843, 1855 n.16, 52 L.Ed.2d 396 (1977), which found the EEOC to be the public's champion against racial discrimination in *pattern and practice suits under § 707*. This hardly disturbs the reasoning in *Holmes*, particularly since the court in *Sun Oil* made no reference to that opinion.

**18.** In *Holmes*, the EEOC argued that it never could satisfy the requirement of class membership. The court, however, dismissed this concern:

[I]t would be anomalous in the extreme to hold that EEOC, an enforcement agency expressly authorized by Congress to sue, may never do so under Rule 23 solely because it runs afoul of the membership requirement. 556 F.2d at 796–797.

**19.** In the normal situation, we might expect EEOC to be a representative *par excellence*. Having as it does the resources, experience and tenacity adequately to serve the interests of the class it purports to represent, we would think of it as certainly as likely a candidate as any to satisfy 23(a)(4).

556 F.2d at 797. It may be that in certain cases the EEOC's broader public goals may conflict with the private interests at issue in a particular case. This hardly requires the conclusion, however, that the EEOC never will be able to fulfill the requirement of Rule 23(a)(4).

**20.** This result is not contrary to the reasoning in *Occidental Life Insurance Company of California v. E.E.O.C.*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). In that case, the Supreme Court refused to limit the period during which an EEOC enforcement suit may be brought by borrowing state statutes of limitations. The petitioners noted that individual complaints were bound by the time limitations of 706(e), (f). Inasmuch as Title VII imposes no explicit limitation on the EEOC, they argued that the most analogous statute of limitations should be applied. The Court, however, observed a critical distinction between private complainants and the EEOC:

Unlike the typical litigant against whom a statute of limitations might appropriately run, the EEOC is required by law to refrain from commencing a civil action until it has discharged its administrative duties.

In view of the federal policy requiring employment discrimination claims to be investigated by the EEOC and, whenever possible, administratively resolved before suit is brought in a federal court, it is hardly appropriate to rely on the 'State's wisdom in setting a limit . . . on the prosecution . . .'

432 U.S. at 368, 97 S.Ct. at 2455. Moreover, the Court observed that defendant employers would not be disadvantaged by the refusal to apply a statute of limitations against the EEOC, since Title VII requires that employers be given notice within 10 days of the filing of a charge, and be apprised of the progress of any EEOC investigations. *Id.* at 372, 97 S.Ct. at 1873. The instant situation is distinguishable on two scores. First, as indicated above, there is no reason to differentiate between the EEOC and private litigants for the purposes of Rule 23(a). Second, there is little assurance that the courts

## Applicable Time Limitations

The defendant also asks this Court to impose time limits as to the earliest and latest date that alleged discrimination is actionable in this suit. Specifically, the defendant argues that no discrimination against women occurring prior to July 24, 1969 (90 days prior to the filing of the complaint with the EEOC), and no discrimination against males prior to March 1, 1969 (5 years prior to the filing of the complaint), should be actionable. Standard Brands also argues that no discrimination occurring subsequent to March 1, 1974, the date that complaint was filed, should be at issue in this lawsuit.

The request to establish the 1969 dates as the earliest time at which Standard Brands' practices will be examined depends upon a rigorous application of the 90–day internal statute of limitations period contained in Title VII [21] and the five-year period that is applicable to § 1981 suits.[22] The defendant assumes that all statutory violations that might have occurred prior to these dates is time-barred. The complaint, however, alleges that discriminatory practices have been the consistent policy of the defendant at least as far back as July 2, 1965. Thus, it is clear that the complaint seeks to include acts prior to 1969 as part of a "continuing violation" theory.

The purpose of this theory is "to add some flexibility to an otherwise rigid jurisdictional filing requirement that might often result in the denial of Title VII remedies to employees who have suffered employment discrimination." *In Re Consolidated Pretrial Proceedings in the Airline Cases*, 582 F.2d 1142, 1148 (7th Cir. 1978). Under this doctrine, the claim of an aggrieved party will not be time-barred, even if the normally applicable period for filing has passed, if the alleged violation actually continued up to the time charges are filed. *Id.*

The defendant argues that the continuing violation theory no longer is valid. In *United Airlines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1979), the Supreme Court refused to apply the continuing violation theory in a Title VII action. There, the plaintiff, who had been discriminatorily fired in 1968 and rehired in 1972, without back seniority, attacked the defendant's seniority system on the ground that it perpetuated the effects of the 1968 discriminatory act. The Court, however, observed that the seniority system itself was neutral in its operation. Thus, the fact that it gave present effect to some past discrimination was insufficient to state a claim under Title VII. "[T]he emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists." 431 U.S. at 558, 97 S.Ct. at 1889 (emphasis original).

In the *Airline Cases*, the Seventh Circuit distinguished *Evans* from the situation in which the discriminatory policy itself continues up until the time of filing. Where a discriminatory policy continues in existence, the critical question posited by *Evans* —whether any present violation exists—is answered in the affirmative. In such a case, the continuing violation theory is not being used to attack an employer policy which no longer is in existence, but rather, it operates to bring within the scope of litigation all those acts which are pursuant to the present policy of the employer. Use of the continuing violation theory in the former instance clearly would undermine the goals served by the statute of limitations. An employer could be unfairly surprised by stale claims brought on the basis of discrete acts performed far in the past. In the latter case, however, any acts for which the employer is held liable would be

---

could devise alternate procedures to provide parties with the protections accorded by Rule 23(a).

**21.** Section 706(e), 42 U.S.C. § 2000e–5(e), was amended in 1972 to extend the time period for filing a charge with the EEOC to 180 days. Since the charge in this case was filed in 1969,

however, the 90–day limitations period is applicable.

**22.** *Waters v. Wisconsin Steel Works*, 427 F.2d 476, 488 (7th Cir.), *cert. denied*, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

the result of a policy which he maintained up to the date of the complaint. Accordingly, he cannot claim that the statute of limitations is circumvented by holding him responsible for the results of that policy.

■ Thus, the Seventh Circuit has found the continuing violation theory to be viable in a situation such as the one presented by this case. Since the alleged discriminatory policies in this case continued in effect up until the filing of the EEOC complaint in 1969, the Court finds that discriminatory acts which might have occurred as far back as July 2, 1965, may be included in this action.[23]

■ The defendant's request to close the class as of March 1, 1974, relies on the authority of *Mathews v. Diaz*, 426 U.S. 67, 71 n.3, 96 S.Ct. 1883, 1887, n.3, 48 L.Ed.2d 478 (1976). There, the Supreme Court held that district courts lack jurisdiction over the claims of prospective class members who in the future may be discriminated against. This does not mean, however, that the class of injured persons must be closed as of the time of the complaint. As observed by the court in *Curtis v. Voss*, 73 F.R.D. 580 (N.D. Ill.1976):

[T]he exclusion of an individual at the time the class is defined does not imply exclusion at the time judgment is entered. Moreover, from a pragmatic viewpoint, the district court is concerned with those who in the future may be class members only to the extent that at some point, their previously hypothetical grievance matures into a claim upon which the requested relief may be granted. When this occurs, the person qualifies as a present class member, even if the class definition is specifically limited to those who have already been injured or threatened with injury by the defendant's conduct. Since the future class members who actually suffer injury thereby become present class members eligible for relief, a definition encompassing future members is superfluous.

*Id.* at 582–583.

■ Thus, while the Court agrees that persons who in the future may be discriminated against cannot be included in the class at this time, the Court declines to freeze the constituency of the class as of March 1, 1974. If the defendant is found liable for violations of Title VII of § 1981, then all employees who actually have suffered injury as of the date of judgment will be treated as members of the class for the purposes of relief.

To summarize, the Court finds that Crane has the capacity to represent the class of female employees alleging discrimination in job assignment, transfer and promotion policy, and terms and conditions of employment. The Court concludes, however, that no named plaintiff in this action may represent the class of persons allegedly discriminated against in hiring. Therefore, those persons must be removed from the class in this case. The Court also holds that the class includes persons allegedly discriminated by defendant's policies as far back as July 2, 1965, and that the class may be expanded to include persons who suffer discrimination from this time until the conclusion of the litigation.

Accordingly, the Court modifies the class certification, and redefines the class in this case as follows:

All black, Spanish-surnamed, and female citizens who have been or are employed at defendant's Pershing Road facility, and since July 2, 1965, have been or are being discriminated against (i) in their job assignments, and/or (ii) in their transfer or promotion opportunities, and/or (iii) in their terms and conditions

---

23. The Court believes this reasoning to be applicable to § 1981 actions as well. *See Waters v. Wisconsin Steel Works of International Harvester Company*, 502 F.2d 1309, 1316 (7th Cir. 1974) (Courts should "look to the principles of law created under Title VII for direction" in interpreting § 1981). Thus, to the extent that the claims of black and Spanish-surnamed males may be premised solely on § 1981, the continuing violation theory permits the inclusion of discrimination pursuant to employer's policy as far back as July, 1965.

of employment because of race, national origin, or sex.

It is so ordered.