**Jake ROWE**

v.

**GENERAL MOTORS CORPORATION.**

**Civ. A. No. 10391.**

United States District Court,
N.D. Georgia,
Atlanta Division.

April 30, 1982.

See also, D.C., 550 F.Supp. 217.

Fletcher Farrington, Savannah, Ga., Amy Totenberg, Atlanta, Ga., for claimants-movants.

William A. Clineburg, Jr., Richard A. Schneider, Dan Heller, King & Spalding, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

The instant action is likely among the first Title VII class actions ever filed in this District, having been originally filed on August 25, 1966. The class was comprised of black hourly-paid workers at Defendant's Lakewood, Georgia plant.

The final decree was entered on September 28, 1972. It ordered Defendant to post notices of training programs for employees desiring to advance from hourly-paid to salaried jobs. It ordered the posting of notices regarding qualifications for entry-level salaried jobs and where applications for promotion to these jobs could be obtained. Finally, the decree ordered Defendant to continue the practice it had (apparently) previously voluntarily adopted of not requiring a supervisor's recommendation as a prerequisite for promotion of an hourly-paid employee to a salaried job.

On January 16, 1981, 42 black employees at the Lakewood plant filed a Motion for Further Relief. The file was administratively reopened and the case assigned to the undersigned district judge.

The 42 Claimants who now seek further relief are persons who, for varying periods of time prior to entry of the *Rowe* decree, held hourly-paid positions at the Lakewood plant.[1] Many of these persons are now salaried employees. Some no longer work for Defendant. The motion asks the Court to modify the 1972 decree to grant each of the 42 Claimants back pay for periods both prior to and following entry of the decree. It asks the Court to augment the 1972 decree with additional provisions prohibiting discrimination against salaried black employees. The motion does not expressly seek an order finding Defendant in contempt of the *Rowe* decree, but in papers filed by the Claimants since the filing of the Motion for Further Relief, it appears Claimants may be seeking such an adjudication.

Following submission of the Motion for Further Relief, the Court reviewed the *Rowe* file and the opinion of the Court of Appeals for the Fifth Circuit, *Rowe v. General Motors Corp.*, 457 F.2d 348 (5th Cir. 1972). Also, the Court reviewed a subsequent Fifth Circuit opinion interpreting *Rowe,* and particularly the extent of its *res judicata* effect, *Johnson v. General Motors Corp.*, 598 F.2d 432 (5th Cir.1979), as well as the order of the *Johnson* district court dismissing that case (Order entered December 16, 1980, Edenfield, J.).[2]

Noting the presence of substantial discovery disputes in the reopened *Rowe* case which stem from disputes as to the extent to which the Court of Appeals' decision in *Rowe,* the Court of Appeals' decision in *Johnson,* and the district court's order of dismissal in *Johnson* bar the relief sought by Claimants in their motion for relief, and also noting a possible issue as to the timeliness of the instant claims, the Court set the instant matter down for an in-chambers conference on November 24, 1981, to attempt to determine the precise scope of the

---

1. It is not entirely clear that *all* of the 42 claimants were employed as hourly workers prior to entry of the *Rowe* decree. *See, e.g.,* claims of Fred Goodlett and La June Johnson, Claimants' Statement filed April 10, 1981 at 13, 22. However, it is clear that the vast majority were.

2. Claimants on February 9, 1982 requested the Court to take judicial notice of the record in *Johnson.* The Court GRANTS this request.

issues properly before the Court at this time. At the conclusion of the conference, the Court asked the parties to address, in briefs, a variety of legal issues related to such determination. Those briefs have been filed and considered by the Court.

## BACKGROUND

On August 25, 1966, Jake Rowe, a black hourly worker at General Motors' Lakewood plant, filed a Complaint alleging violations of 42 U.S.C. § 2000e et seq. (Title VII) and 42 U.S.C. § 1981 against his employer. The Complaint, which alleged that Rowe had been employed by General Motors since March 22, 1963 sought injunctive relief on behalf of Rowe and others similarly situated, but back pay only on behalf of Rowe.[3] No motion to certify the class was filed. The district court found the require-

**3.** Rowe alleged discrimination in GM's failure to promote him from an hourly to a salaried position and in its misleading him about the availability of such salaried openings. *Rowe* Complaint, ¶ VI, Record at 610. Rowe also alleged that "[u]nlike white workers, Negroes are rarely recommended for or given the benefit of advancing to better jobs in management as a result of on-the-job-training program (sic)." *Id.,* ¶ VII, Record at 611. The class relief sought included an injunction against "the maintenance of any policy, practice, custom or usage of refusing to employ Negroes in management as foremen and supervisors, or limiting other job opportunities in the State of Georgia on the basis of race and color." *Id.,* ¶ XI (2), Record at 613.

In its Motion to Dismiss Complaint on Ground It Is Not a Proper Class Action, Defendant argued, *inter alia,* that the Complaint sought relief for individualized discrimination. The Court's Order, noting that Plaintiff alleged that Defendant "discriminates against members of the Negro race in general," found a triable issue of fact on the issue presented. Order entered Nov. 21, 1966, Record at 672. Then-District Judge Morgan, never, however, certified the class. By 1969, then-District Judge Albert Henderson was presiding over the case.

It is apparent, however, that the district court considered the case a class action. Judge Morgan, for example, denied a motion for intervention by Clarence Williams and Willie Lee Williams on the ground that they were adequately represented in the class action. "[I]nherent in the Court's allowance of the instant action to be brought as a class action was a determination that the interests of the class were adequately represented." Order entered July 13, 1967, Record at 717. The district court, however, not having the benefit of subsequent decisions such as *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 251–52 (5th Cir.1974), *later app.* 576 F.2d 1157, 1159 (5th Cir.1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979), and *Johnson v. Goodyear Tire & Rubber Co., Synthetic Rubber Plant,* 491 F.2d 1364, 1375 (5th Cir.1974), which held back pay to be a "normal" part of equitable relief, indicated in its denial of reconsideration that it did not believe that the "class ac-

tion" aspect of the suit extended to individual monetary compensation. Order entered October 4, 1967, Record at 729.

Both Clarence Williams and Willie Lee Williams filed separate actions which were consolidated for trial. In their Proposed Findings of Fact and Conclusions of Law at 3, (filed June 13, 1969), Record at 937, Plaintiffs defined the proposed class as "all Negroes presently employed at the defendant's Chevrolet Atlanta plant or who shall become so employed and seek consideration for either promotion or transfer to the salaried division from an hourly rated job." Each named plaintiff sought $500 in "nominal damages." *Id.* at 14, 16–17, Record at 948, 950–51. In their supportive brief, named Plaintiffs conceded that they were entitled only to a nominal award. They stated:

> The reason for this concession is that the evidence does not show with the requisite precision the actual amount of their interim losses. See Section 2000e–5(g), 42 United States Code. Thus, unless the Court is persuaded that section 2000e–5(g) authorizes the award of nominal or token back pay as distinguished from the full amount of back pay actually lost, the question of back pay need not be considered.

Brief for Plaintiffs in Support of Submitted Findings of Fact and Conclusions of Law [hereinafter referred to as Plaintiffs' Brief in Support] at 2, (filed June 9, 1969), Record at 904. Plaintiffs made this concession for themselves as individuals, since back pay was not sought for the class. Plaintiffs, in support of their request for classwide equitable relief, asked the Court "to either enjoin the Defendant to desist from using its present transfer/promotion system or to declare that it violates the Act." Plaintiffs' Brief in Support at 21, Record at 923.

In its Order entered September 30, 1969, the District Court described the "alleged" *Rowe* class as "all Negroes similarly situated to Rowe and all present and future Negroes employed in hourly rated jobs." The Court's description of the relief sought makes clear that Rowe did not seek back pay on behalf of the class. *Id.* at 2, Record at 958. Judge Henderson found that Judge Morgan's Order of November 21, 1966, had determined that the suit could be maintained as a class action and that Plaintiff had a right to proceed on behalf of said class. *Id.* at 2.

ment of an immediate supervisor's recommendation for promotion of an hourly wage earner to a salaried position was nondiscriminatory. Judgment was entered for Defendant. *Rowe v. General Motors Corp.,* 4 E.P.D. ¶ 7715 (N.D.Ga.1969).

The Court of Appeals reversed. *Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir.1972). It described *Rowe* as a class action encompassing "all Negroes similarly situated to Rowe and all present and future Black hourly rated employees at GMAD who suffered the discrimination in these employment practices." 457 F.2d at 351 n. 3.[4] While noting a departmental breakdown at Lakewood consisting of 12 departments, 457 F.2d 351 n. 5, the Court was primarily concerned with a single department, the production department, where most hourly-paid workers were concentrated. 457 F.2d at 352. The salaried positions considered to be promotional opportunities (and these were not limited to production) were two: foreman or clerk. 457 F.2d at 353 n. 7. The appellate court found that

**4.** The Court of Appeals stated that Judge Morgan had allowed the class action over the strong protest of GM. 457 F.2d at 359, n. 24.

**5.** The Court stressed that "until 1962 GMAD was wholly segregated with Blacks being limited to the few custodial jobs." 457 F.2d at 351. It noted the district court's failure to make findings on pre-1962 treatment of Blacks. 457 F.2d at 357 n. 16.

In answer to GM's argument that reductions in force explained the disparity in black and white promotions, the Court of Appeals said: "Foremost is the fact that, starting with 1962 plant segregation and the policy of lay-offs and rehirings on some sort of 'seniority basis,' the disadvantage suffered by the Blacks hired after 1962 in lay-offs and rehiring is the direct result of the prior segregated policy." 457 F.2d at 358 (footnote omitted).

**6.** Under the heading "Individual Plaintiff Employees" the Court of Appeals said that the district court should on remand consider appropriate remedies, including back pay. 457 F.2d at 360.

**7.** The District Court Order was the following:
FINAL DECREE
These actions having been remanded by the judgment of the United States Court of Appeals for the Fifth Circuit dated March 2, 1972, now in accordance with the said judgment and upon consideration of the record, it is ordered, adjudged and decreed as follows:

GM's promotional system, keyed as it was to a supervisor's recommendation, was discriminatory in effect. This was demonstrated by statistical evidence. Although GM had taken a "benign approach" to eliminating traces of racial bias, it had not demonstrated a legitimate business necessity for its practices. 457 F.2d at 354–58.[5] The Court indicated that injunctive and declaratory relief was appropriate for the class.[6] It explained that a decree mutually proposed by the parties was appended to the opinion, 457 F.2d at 360–61, Appendix A. It added that "[o]f course, the District Court, on application or on its own part, has initial plenary power to enter such further orders as are necessary without leave of this Court." 457 F.2d at 360 n. 25.

On remand, the district court's final order of September 28, 1972, except for individual dismissals on stipulations and an attorney's fee award of $13,000, was a verbatim adoption of the Court of Appeals' suggested order.[7]

Class Action
A.
The defendant shall continue to take certain affirmative action as hereinafter set forth designated to implement defendant's policy of equal employment opportunity at its GM Assembly Division Lakewood Plant, Atlanta, Georgia, and to discharge defendant's obligations under law not to discriminate on the basis of race or color in the promotion or transfer of employees.

Defendant shall continue its practice of periodically posting on bulletin boards in conspicuous places throughout its Lakewood plant notices announcing the formation of pre-foreman training classes or other training programs generally designed to equip employees with necessary skills for advancement to supervisory or other salaried jobs or to skilled trades work. Such notices shall remain posted for reasonable periods and will set forth information indicating how interested employees can make application for participation in such training programs.

Defendant shall periodically post on bulletin boards in conspicuous places throughout its Lakewood plant notices which shall contain information with respect to the qualifications required for entry level non-supervisory salaried positions and how and where application can be made.

Defendant shall continue its practice that no hourly rate employees and/or applicants

No class-wide monetary relief was sought or granted in *Rowe*. *See also Johnson v. General Motors Corp.,* 598 F.2d 432 (5th Cir.1979). The three named plaintiffs settled their individual monetary claims for $1,000 each. No fairness hearing on the settlement was sought or held.

Herman Johnson filed an EEOC complaint against General Motors on June 18, 1973.[8] He received a right to sue letter on July 16, 1976. He filed a class action against GM under Title VII and Section 1981 on July 19, 1976. He described the proposed class as encompassing all past, present and potential black employees and applicants at the GM Atlanta facility. Johnson sought both injunctive and monetary relief, alleging wide-ranging discrimination, including bias in promotion, job assignment, job education and the dissemination of information on job openings. Although GM's answer raised, *inter alia,* various timeliness defenses such as statute of limitations, failure to fulfill Title VII's time requirements, and *laches,* GM never moved to dismiss on these grounds. Answer of Defendant General Motors Corp. (filed September 10, 1976), Record at 49, 50.

On a motion for class certification, the District Court held that the *res judicata* effect of the *Rowe* decree barred Johnson as an individual plaintiff. Since the named plaintiff was deemed an inadequate representative, the case could not proceed as to non-*Rowe* class members. Order entered May 23, 1977, Record at 290.

The Court of Appeals reversed. It noted with respect to Johnson that he was an employee at Lakewood before and during *Rowe,* and that the discrimination alleged— in promotion—"was the very type of discrimination at issue in *Rowe*." 598 F.2d at 434. Although it found lack of formal certification in *Rowe* insufficient to annul the decree's binding effect, 598 F.2d at 434–35, and although it noted that "res judicata would bar Johnson's entitlement to relief duplicative of that already granted in *Rowe* or to relief which could have been sought in that action," 598 F.2d at 438, the Court held that due process required that Johnson's monetary claims escape the *res judicata* bar. Even though *Rowe* was a Fed.R.Civ.P. 23(b)(2) action where notice was not mandatory, the Court held that "[b]efore an absent class member may be forever barred from pursuing an individual damage claim, however, due process requires that he receive some form of notice that the class

---

for salaried employment at the Lakewood Plant shall be denied review or consideration for salaried employment by the Management Development Committee solely for the reason that they are not supported by the recommendation of their immediate supervisor.

**B.**

Attorneys' fees are hereby awarded in favor of the plaintiffs in the amount of Thirteen Thousand Dollars ($13,000) to be paid over to plaintiffs' attorney by the defendant and to cover all services through the termination of this litigation.

**C.**

The costs are assessed against the defendant.

*Individual Actions*

Upon stipulation of counsel, the actions of Willie Lee Williams, Clarence E. Williams and Jake Rowe are dismissed with prejudice. Final Decree entered September 28, 1978.

**8.** Johnson's EEOC complaint stated:

"The company limits the number of blacks in management positions including but not limited to the foreman class in the body department.

The females assigned to jobs in the body department except one are of the black race, whereas the majority of Caucasian females are placed in other department (sic) and assigned easier jobs.

Record at 172. *Johnson v. General Motors Corp.,* Civ. No. 76–1204 (N.D.Ga.).

The charge as to female employees was subsequently dropped.

Since 42 U.S.C. § 2000e–5(e) requires filing of the charge within 180 days of the alleged unlawful practice, Johnson's claim, to be timely filed, must have accrued after September 28, 1972, the date of entry of the *Rowe* decree. His EEOC complaint indicates that the most recent date on which the alleged discrimination took place was March of 1973. Record at 172. It is possible, however, that if a "continuing violation" were alleged, a claim could have accrued prior to the entry of the *Rowe* decree and still have been the timely subject of an EEOC complaint filed in June of 1973. *See generally* Schlei, B. & Grossman, P., Employment Discrimination Law, at 898–901 (1976 ed.).

action is pending and that his damage claims may be adjudicated as part of it." 598 F.2d at 438. Having never received the requisite notice, Johnson's damage claims could not be barred. In addition, the Court of Appeals indicated that a class action might be an appropriate vehicle for other such monetary claims:

> Our decision does not imply that Johnson's suit may properly be maintained as a class action. If there are others similarly situated to Johnson, there is nothing to prevent them from litigating their claims in a class suit, but the questions of whether Johnson's particular suit meets the requirements of Rule 23, or whether Johnson is an adequate class representative, are not before us. On remand, it will be for the district court to manage the suit pursuant to its usual responsibilities under Rule 23.

598 F.2d at 438.

The Court of Appeals recognized that further injunctive relief presented a "more intricate issue." *Id.* The Court noted two possible areas where Johnson's or the purported class' claims might lie outside the scope of *Rowe:* where allegations ranged beyond the procedures for promotion to salaried posts which were at issue in *Rowe* and where Johnson purported to represent not just hourly wage earners, but all black employees at Lakewood. *Id.* With regard to the latter, the Court stated that "it is impossible at this juncture to know whether Johnson may adequately represent class members who may be entitled to equitable relief because of practices which did not affect Johnson or class members from *Rowe.*" *Id.* The Court added that it was possible that Johnson, either individually or on behalf of the *Rowe* class, might be entitled to injunctive relief "under the district court's continuing jurisdiction to enforce its *Rowe* decree." 598 F.2d at 439.

On remand, the District Court ultimately rejected Plaintiff's attempt to distinguish Johnson's claims from Rowe's. The Court was unpersuaded that the interjection of an intermediary training course and temporary foreman assignments in Johnson's case were sufficient to distinguish his claim from Rowe's, *i.e.,* the failure to promote blacks from hourly to salaried positions. Order entered December 16, 1980, at 6. There is no indication, however, that the District Court determined that all of Johnson's claims in fact accrued prior to the entry of the final decree in *Rowe.*[9] The District Court determined that Johnson should seek relief in an unspecified fashion under the *Rowe* court's "continuing authority to enforce its decree." *Id.* at 7. The Court expressed no opinion as to the propriety of another class action with other representatives.

Subsequently, thirteen members of the class that Johnson had sought to certify, "hired after the Rowe decree was entered" moved to intervene in order to appeal denial of certification. *See* Motion to Intervene, filed January 16, 1981. Although acknowledging that the point was uncertain, the would-be-intervenors argued that they

---

**9.** The district court in *Johnson v. General Motors Corp.,* Civ. No. 76–1204 (N.D.Ga.) described the connection between Herman Johnson's claim and the *Rowe* case as follows:

> Plaintiff in the instant case, Herman Johnson, initially was employed by General Motors in February, 1970, while *Rowe* was on appeal to the Fifth Circuit. He began as an hourly-paid assembly line worker and moved progressively to higher-paying hourly positions. Shortly after being hired, Johnson applied for and was accepted in a pre-foreman training course. He completed that course in July 1971 and immediately was assigned for two weeks as a temporary foreman in the maintenance department. He subsequently held foreman positions in the body shop on

two occasions in 1972, once for seven weeks and once for fifteen weeks.

> Following the Fifth Circuit's reversal in *Rowe,* purportedly as a result of criticism of Johnson's performance as a supervisor during the time he served as a foreman in 1972, Johnson was returned to the hourly ranks and was not reassigned as a foreman until 1976. He has been a foreman since that time. His complaint in this action is that General Motors' failure to promote him to foreman until 1976 was a result of racial discrimination, and he seeks back pay for the period from 1972 through his promotion in 1976.

Order entered December 16, 1980, at 3–4.

were probably not entitled to seek further relief under *Rowe.* The District Court denied the motion for intervention on the ground that the would-be-intervenors had no interest in the subject of the action, in view of the prior finding that Johnson's claims lacked typicality, and on the ground that there were other alternatives open to protect their interest: "They may seek relief under *Rowe,* since they may fall within its coverage of all present *and future* Negro hourly employees; or they may institute a new action, either individually or as a class." (emphasis in original). Order filed February 24, 1981, at 2.

On the same day as the motion for intervention, Anderson Allen and 41 other Claimants moved for further relief in the instant action. Motion for Further Relief (filed January 16, 1981). They allege that they were black employees of Defendant prior to entry of the *Rowe* decree. They seek back pay as members of the *Rowe* class. They also allege that "General Motors continues to discriminate against black employees in all aspects relating to salaried jobs at its Lakewood Assembly plant." They ask the Court to "[m]odify the decree, enjoining defendants from further discriminating with respect to salaried jobs." Motion for Further Relief at 2.

In support, Claimants rely heavily on the *Johnson* Court of Appeals' decision that *res judicata* does not bar their back pay claims. They also stress the *Johnson* district court's subsequent suggestion, see discussion *supra* at pages 209–210, that Johnson seek his relief in *Rowe.*

Claimants contend that they are entitled to back pay starting from the "first identifiable incident of proven promotion discrimination occurring subsequent to July 2, 1965." *Id.* at 6. Claimants have listed 55 individual claims, including "[t]he claims of individuals who are not members of the *Rowe* class by virtue of being initially hired into salaried positions but whose claims are related to this litigation." *Id.* at 6.

### RULINGS

Based on the briefs, the court files in *Rowe* and *Johnson,* and the opinions of the Court of Appeals for the Fifth Circuit in *Rowe* and *Johnson,* this Court makes the following rulings:

1. Since Claimants are all members of the class recognized by the Court of Appeals in *Rowe,* they are bound by the *res judicata* effect of the September 28, 1972 decree. Thus, they are both bound by its strictures and entitled to its benefits.

■ 2. By definition, a judgment is *res judicata* only as to causes of action which accrue prior to entry of the judgment. To the extent these Claimants complain of discriminatory acts of Defendant which allegedly occurred after September 28, 1972, the bar of *res judicata* does not apply.

■ 3. Furthermore, under the Court of Appeals' decision in *Johnson,* the *res judicata* effect of the September 28, 1972 decree in *Rowe* does not extend to claims for back pay for discrimination which occurred prior to date of entry of the *Rowe* decree. These claims may be asserted in the within action in the form of requested modification of the September 28, 1972 decree.

Although the Court of Appeals' decision in *Johnson* left open the possibility that additional injunctive relief could be obtained for pre-decree acts of discrimination "outside the scope of *Rowe,*" Claimants' Motion for Further Relief does not request such relief and thus, the Court will not consider modification of the 1972 decree to add additional injunctive relief for alleged pre-decree discrimination.

■ 4. Under Title VII, there are not separate causes of action for injunctive relief on the one hand and monetary relief on the other hand. Rather, there is a unitary cause of action for acts of discrimination which violate Title VII. An adjudication of liability under Title VII may lead to any number of forms of relief. Injunctive relief is one form. Monetary relief, typically in the form of back pay, is another type of relief.

5. In *Rowe,* the Court held Defendant was liable to Plaintiffs and class members

for acts of discrimination which occurred prior to September 28, 1972. Thus, this Court need not and may not redetermine liability in connection with the now-asserted back pay claims brought by these 42 Claimants, to the extent they relate to pre-decree liability. However, this does not automatically mean that all or for that matter any of these Claimants is entitled to back pay. Neither does it resolve a number of complicated issues relative to the propriety of an award of back pay, or the amount of back pay, if it is to be awarded.

■ 6. The Court cannot determine, based on the present record, whether any of the 42 Claimants should be awarded back pay. The Court holds that the pre-decree back pay claims are not legally barred at this time by either the statute of limitations or *laches* or by failure to meet Title VII's time requirements.[10] The Court further holds that if these Claimants are entitled to back pay, that back pay ceases to accrue, at the latest, on September 28, 1972.[11] In view of the total history of the instant case, the Court is strongly disinclined to award "front pay," but does not at this time rule on claimants' request for "front pay."

■ 7. Back pay is a form of equitable relief. Back pay is generally granted as part of overall relief in Title VII cases. There is a presumption in favor of awarding back pay where liability is adjudicated in favor of plaintiff. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). However, there are circumstances in which an award of back pay has been held inappropriate. *See City of Los Angeles v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978). It will be up to the Claimants to convince the Court of the general appropriateness of supplementing the 1972 decree at this late date to add the further equitable relief of back pay. This is primarily a legal question, not a factual question, although the Court recognizes it may be necessary to have an evidentiary hearing in order to rule on this matter.

8. If it appears that an award of back pay to absent class members under the 1972 decree is generally appropriate, then the Court will proceed to consideration of the 42 individual Claimants' claims for pre-decree back pay. Since Defendant's liability to these Claimants has already been determined, it is appropriate that the Claimants should bear only a minimal evidentiary burden.[12] Thus, subject to the preconditions

10. Although nine years have passed since entry of the *Rowe* injunction, Claimants as a class have diligently endeavored to find the proper avenue for further relief. *See, e.g.,* Complaint, *Johnson v. General Motors Corp.,* Civ. No. C76–1204 (filed July 19, 1976). It cannot be said that Claimants have slept on their rights or that Defendant is the victim of surprise. *See American Pipe & Construction Co. v. Utah,* 414 U.S. 538, at 554, 94 S.Ct. 756, at 766, 38 L.Ed.2d 713 (1974). Indeed, the Court believes that it would be fundamentally unfair to adhere to *Johnson's* holding that Claimants' equitable claims were barred by the res judicata effect of *Rowe* without giving Claimants the benefit of the tolling of the limitations period which the *Rowe* action occasioned.

11. If Defendant voluntarily ceased requiring a supervisor's recommendation for promotion prior to date of entry of the decree, then back pay could not accrue past date of cessation.

12. *See United States v. United States Steel Corp.,* 520 F.2d 1043, 1053–55 (5th Cir.1975), *cert. denied,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976); *Sabala v. Western Gillette,* *Inc.,* 516 F.2d 1251, 1255 (5th Cir.1975), *vacated on other grounds,* 431 U.S. 951, 97 S.Ct. 2670, 53 L.Ed.2d 268 (1977); *Baxter v. Savannah Sugar Refining Corp.,* 495 F.2d 437, 443–44 (5th Cir.), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974). There is no "substantial question" of economic loss or causation that might affect Claimants' entitlement to move to Stage II proceedings. *United States v. United States Steel Corp.,* 520 F.2d at 1054.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) requires no different result. These cases involve the burden of proof in a unitary, non-bifurcated proceeding. As the Supreme Court recognized in *McDonnell Douglas* itself, 411 U.S. at 802 n. 13, 93 S.Ct. 1824 n. 13, different factual circumstances will compel different specifications of the burden of proof. Liability for discrimination against black hourly workers is an adjudicated fact in this case. There is no reason for proper back pay claimants to re-adjudicate that issue.

The Court finds that the reasoning of the Eighth Circuit in *Taylor v. Teletype Corp.,* 648

expressed in the preceding paragraphs, the Court will require Claimants to prove that they were in the *Rowe* class; that they were *prima facie* qualified for promotion into the salaried ranks prior to the time the decree was entered; and the amount of back pay to which they contend they are entitled. The burden will then shift to Defendant to show the Court why such individual Claimant should not receive a back pay award, or why the amount of back pay claimed by the Claimant is excessive.

9. The Court declines to consider, on a motion for further relief in the instant action, any claims for alleged acts of discrimination occurring after September 28, 1972, except for any claims which might be made that Defendant has violated the terms of the 1972 decree and therefore is in contempt of Court.

10. It is not at all clear whether or not these 42 Claimants do contend General Motors is in contempt of the 1972 decree. In

order to clarify this matter, Claimants are directed to file, within 30 days of date of entry of this Order, a statement of their position in this regard. If Claimants do contend Defendant is in contempt of the 1972 decree, they are directed to include in this statement a specific recital of exactly how and when General Motors violated the decree. Claimants must note that conclusory recitals will be insufficient. Their statement should set forth a summary of the evidence Claimants would expect to present at a contempt hearing, including names of witnesses and the testimony to be offered by each witness.

11. This Court does not interpret the Court of Appeals' decision in *Johnson* as having held that any claims for alleged acts of discrimination which occurred after September 28, 1972 are barred by the *Rowe* decree in any respect whatsoever. If the *Johnson* district court ruled otherwise, this

F.2d 1129, 1137 n. 18 (8th Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981) applies to the particular issue here presented:

> A case of classwide discrimination differs significantly [from the *McDonnell Douglas prima facie* showing by plaintiff].... [A] classwide finding establishes the employer as a proven wrongdoer who has maintained a discriminatory practice. Thus, a court may reasonably presume—unless the employer proves otherwise—that any class member was a victim of that policy.

Defendant is a proven wrongdoer with regard to the class of black hourly workers similarly situated to Jake Rowe prior to September 28, 1972. Defendant thus bears the burden of rebutting the presumption that an individual who has demonstrated class membership was denied promotion for a legitimate business reason. *Taylor v. Teletype Corp.,* 648 F.2d at 1136–37.

Each Claimant, however, must "bring [himself] within the class" and "describe the harmful effect of the discrimination on his employment position." *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, at 259 (5th Cir. 1974) *later appeal,* 576 F.2d 1157 (5th Cir. 1978), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979). Given the circumstances of this case, a claimant must submit evidence of the position to which he wanted to advance, and the amount of back pay to which he is entitled and the reasons therefor. Defendant has the burden of showing the denial of promotion for lawful reasons. *James v. Stock-*

*ham Valves & Fittings Co.,* 559 F.2d 310, 357–58 (5th Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *Johnson v. Goodyear Tire & Rubber Co., Synthetic Rubber Plant,* 491 F.2d 1364, 1374–75 (5th Cir.1974). Defendant's proof that a given class member would not have succeeded to a given vacancy must be by clear and convincing evidence. *United States v. United States Steel Corp.,* 520 F.2d 1043, at 1056, *cert. denied,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976); *Johnson v. Goodyear Tire & Rubber Co., Synthetic Rubber Plant,* 491 F.2d 1364, at 1380 (5th Cir.1974).

Claimants have the burden of establishing that they met any objective and legitimate job qualifications articulated by Defendant and known to them at the time in question. However, in view of the *Rowe* holding that GM's promotional system based on supervisory recommendations was discriminatory and lacking in legitimate promotional criteria, the burden of proving any other valid qualifications existed for a given salaried position is on Defendant. *See Baxter v. Savannah Sugar Refining Corp.,* 495 F.2d 437, at 444 (5th Cir.1974), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974). In addition, since prior to the *Rowe* suit, Defendant had no job posting procedure, the burden is on Defendant to show a given Claimant's unwillingness to accept promotion. Since both sides agreed at the November 24, 1981 in-chambers conference that more vacancies than potential black applicants for promotion existed during the relevant period, existence of sufficient available openings is not an issue.

Court disagrees with that ruling.[13] Although the Court is unwilling to hear these claims on a Motion for Further Relief in the instant case, it is willing to consider a proposed separate complaint addressing such claims. Leave is hereby granted to Claimants, or any of them, to file a Proposed Separate Complaint (or individual Proposed Separate Complaints)[14] within 30 days from date of entry of this Order, addressing any alleged discrimination of which Claimants complain subsequent to September 28, 1972. Any proposed complaint thus filed shall attach as exhibits the particular EEOC complaint on which this Court's jurisdiction depends, as well as the relevant right-to-sue letter. If the Plaintiff(s) rely on any form of tolling or estoppel to avoid the bar of the statute of limitations or any Title VII filing deadline, the relevant facts shall be recited in the Proposed Complaint(s). If Claimants or any of them elect to file such Proposed Complaint(s), then Defendant shall have 50 days from date of entry of this Order to file any objections it may have to such Complaint(s)' proceeding at this time. At that juncture, the Court will consider, among other things, the timeliness of Plaintiffs' claims and whether the failure to appeal Judge Edenfield's order denying intervention in the *Johnson* case bars any of such claims. Counsel for Claimants should note that in authorizing this procedure, the Court is not giving advance sanction to a plaintiffs' class comprised of these 42 Claimants. If Claimants elect to seek certification of a class, the burden will be on them to show the Court that the proposed action is properly brought as a class action.

12. If the Court determines that any proposed separate action is facially viable at this time, it will sever such action and permit it to proceed as a separate case before the undersigned district judge.

In summary, Claimants' pre-decree back pay claims MAY PROCEED subject to the

**13.** The *Johnson* district court suggested that the *Rowe* class' inclusion of "*future* employees" might entitle post-decree Claimants to seek relief therein. Since this suggestion was given as one of two alternatives in one of several grounds for the district court's denial of the motion for intervention, it is better interpreted. as *dictum*.

Also, since *Johnson* never determined as a fact that all of Herman Johnson's claims actually accrued prior to entry of the *Rowe* decree, *see* discussion, nn. 9 & 10 and accompanying text, *supra* the Court interprets the Court of Appeals' statement in that case that "[o]n the record before us, however, it is impossible to know whether Johnson may be entitled to equitable relief for alleged wrongs outside the scope of *Rowe*," 598 F.2d at 438, as leaving this Court free to decide whether post-decree claims should be asserted in a separate action.

The September 28, 1972 *Rowe* decree does not describe the class covered. Post-decree Plaintiffs/Claimants, in seeking to join this suit, rely on the *Rowe* Court of Appeals' opinion, which describes the class as including "all Negroes *similarly situated to Rowe* and *all present and future Black hourly rated employees at GMAD who suffered the discrimination in these employment practices.*" *Rowe v. General Motors*, 457 F.2d at 351 n. 3 (5th Cir.1972) (emphasis added).

The quoted language itself suggests that "future" employees who must have "suffered" (past tense) the alleged discrimination, refers to those employees, who by the time some responsive judicial action will have been taken, actually will have undergone a cognizable injury. In the context of an appellate opinion which remanded the case with a suggested remedial decree, the Court believes that the responsive judicial action contemplated was just this decree. In these circumstances, the Court interprets the Court of Appeals' characterization of the class as including "future" black employees to encompass all those black hourly workers in a similar position to *Rowe* between the time of the Court of Appeals' decision and the entry of the 1972 decree.

Also, the district court at the time of entry of the 1972 decree did not have jurisdiction of the hypothetical claims of prospective employees. The Court does not believe that such speculative claims presented a justiciable case or controversy. *See Mathews v. Diaz*, 426 U.S. 67, 72 n. 3, 96 S.Ct. 1883, 1887 n. 3, 48 L.Ed.2d 478 (1976); *Curtis v. Voss*, 73 F.R.D. 580, 582–83 (N.D.Ill.1976); *Local 194, Retail Wholesale and Department Store Union v. Standard Brands, Inc.*, 85 F.R.D. 599, 611 (N.D.Ill.1979). The same logic applies to those alleged acts of discrimination first arising after the entry of the 1972 decree but committed against those in the employ of GM prior to September 28, 1972.

**14.** Such Proposed Complaint(s) shall be attached to a Motion for Leave to File Separate Complaint bearing the style of the instant action; however, the Proposed Complaint(s) themselves should bear the style of the proposed new case, just as though it were being initiated as a new lawsuit.

directions and qualifications set out above; Claimants' are ORDERED to particularize their contempt claims as above-described within 30 days from date of entry of this Order; Claimants' are ORDERED to present any post-decree claim(s) in accordance with the procedure for Proposed Separate Complaint(s) outlined above.