Jake ROWE, et al.

v.

GENERAL MOTORS CORP.

Civ. No. 10391.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 18, 1984.

---

Fletcher Farrington, Savannah, Ga., Amy Totenberg, Atlanta, Ga., for plaintiff.

William A. Clineburg, Jr., Richard Snyder, Dan Heller, King & Spalding, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This case is before the court on its own motion to consider whether a consent decree entered herein on September 28, 1972 should be modified, terminated, or continued for a specific period of time. Briefs have been filed by the parties addressing this issue. Plaintiffs' brief asks the court to continue the 1972 decree in effect for an unstated period, and to augment it by adding provisions requiring Defendant to post job vacancies and to undertake standardized interviewing procedures. Defendant's brief asks the court to terminate the decree, or alternatively, to continue only the portion of the decree pertaining to posting of job qualifications notices for a period of one year.

The 1972 decree provided, in its entirety, as follows:

It is ordered, adjudged and decreed that the defendant shall continue to take certain affirmative action as hereinafter set forth designated, to implement defendant's policy at its GM Assembly Division Lakewood Plant, Atlanta, Georgia, and to discharge defendant's obligations under law not to discriminate on the basis of race or color in the promotion or transfer of employees.

### I.

Defendant shall continue its practice of periodically posting on bulletin boards in conspicuous places throughout its Lakewood plant notices announcing the formation of pre-foreman training classes or other training programs generally designed to equip employees with necessary skills for advancement to supervisory or other salaried jobs or to skilled trades work. Such notices shall remain posted for reasonable periods and will set forth information indicating how interested employees can make application for participation in such training programs.

### II.

Defendant shall periodically post on bulletin boards in conspicuous places throughout its Lakewood plant notices which shall contain information with respect to the qualifications required for entry level non-supervisory salaried positions and how and where application can be made.

### III.

Defendant shall continue its practice that no hourly rate employees and/or applicants for salaried employment at the Lakewood Plant shall be denied review or consideration for salaried employment by the Management Development Committee solely for the reason that they are not supported by the recommendation of their immediate supervisor.

After consideration, the court directs that the portion of the decree relative to posting of qualifications for "entry level, non-supervisory salaried positions" shall continue in effect through July 1, 1985.[1] Thereafter, this portion of the decree shall terminate and shall be of no further force or effect. All remaining portions of the decree shall continue in effect only until November 1; 1984. At that time, said remaining portions of the decree shall terminate and shall be of no further force or effect. In making this determination, the court has taken into account the following factors: (1) whether progress has been made toward achieving the objectives of the 1972 decree; (2) Defendant's compliance with the decree; (3) the length of time the decree has been in effect.

---

1. The court directed compliance on September 22, 1982. However, the plant closed about that time and did not reopen until April 1984.

The *Rowe* decree, *see Rowe v. General Motors Corp.*, 457 F.2d 348 (5th Cir.1972), sought to achieve equality of opportunity for those black hourly workers who wished to move into the salaried ranks at Defendant's Lakewood, Georgia plant. Primarily, the decree dealt with promotions/transfers to the supervisory plant foreman position and non-supervisory clerical and semi-professional positions. Therefore, the relevant inquiry here is how well black hourly employees have fared within the hourly employee group moving to these positions during the time the decree has been in effect.

From 1972 to 1981, black employees represented 21.48% of Defendant's hourly work force.[2] During the period from 1966 through September 28, 1972, 17.39% of the hourly employees who moved into "salaried" clerical positions were black. Between September 28, 1972 and December 31, 1981, 38.89% of the hourly employees who moved into clerical positions were black. In the approximately six years preceding September 28, 1972, 8.33% of the hourly employees who became foremen were black. In the period between September 28, 1972 and December 31, 1981, 17.72% of the hourly employees who became foremen were black. Thus, Defendant has increased black participation in the pool of hourly employees who were promoted/transferred to the relevant salaried positions by over 100% since 1972.

Unfortunately, this does not mean that the present black representation in these positions is so noteworthy.[3] Each time Defendant has experienced a reduction in force at its Lakewood plant, seniority-based layoffs have cut back on black participation. Although recalls have restored some of the diminution, it is obvious that black representation would be greater today had these reductions in force not occurred. In the court's opinion, however, the effect of involuntary layoffs does not detract from Defendant's positive efforts when evaluating compliance with the decree.

The hourly work force is not the exclusive, and perhaps is not even the primary, labor pool for the positions *Rowe* was mainly concerned with. The record does not permit the court to determine how well black applicants fared within the total pool for these positions in the last nine years. The court does not have evidence of the composition of the total pool. However, this is not controlling for purposes of evaluating whether the specific objectives of the decree have been met, because the *Rowe* decree is concerned with the employees *transitioning* from hourly to salaried status.

Plaintiffs have not faulted Defendant's compliance with the portion of the consent decree pertaining to posting notices of certain training classes. Further, Plaintiffs failed to show the court any concrete evidence of Defendant's noncompliance with the portion of the decree prohibiting a supervisory veto over applications for salaried employment, although they were given an opportunity to do this. With respect to both of these portions of the decree, the court further notes that the measures referenced therein were voluntarily undertaken by Defendant prior to entry of the decree.

In summary, the court finds that it is no longer necessary or appropriate for it to mandate, beyond the periods indicated above, the measures required by the 1972 decree.

2. The relevant percentages in each year were as follows: 1972—20.35%; 1973—21.55%; 1974—14.35%; 1975—12.46%; 1976—24.24%; 1977—25.51%; 1978—26.88%; 1979—24.71%; 1980—22.25%; 1981—22.48%. The significant drops in percentages shown in the years 1975 and 1980 reflect the disproportionate impact of seniority-based layoffs in 1973–74 and 1980 on black employees.

3. Plaintiff's evidence in another case before the undersigned, *Geer v. General Motors Corp.*, 588 F.Supp. 1067, showed that in 1981, 13.6% of all level 4 and 5 positions at Lakewood ("entry level, nonsupervisory salaried positions") were held by blacks. Only 7.8% of all level 6 supervisory positions (level 6 includes, but is not limited to the plant foreman positions at issue in *Rowe*) were held by blacks in 1981.

The court has now ruled on each facet of the Motion for Further Relief filed herein on January 16, 1981. First, by order entered April 4, 1984, 586 F.Supp. 365, the court denied Plaintiffs' request for backpay for acts of discrimination which occurred before September 28, 1972. Second, by orders entered April 30 and September 23, 1982, 550 F.Supp. 204, 217 (N.D.Ga.1982), the court allowed and directed Plaintiffs to assert their claims for relief for alleged acts of discrimination occurring after September 28, 1972 in a separate lawsuit. That suit, *Johnson v. General Motors Corp.*, Civil Action No. 82-2270A, is now pending before the undersigned. Third, by order entered June 14, 1984, 586 F.Supp. 368, Plaintiffs' motion for a finding of civil contempt, based upon Defendant's noncompliance with a portion of the 1972 decree was denied. Fourth, in the within order, the court has, on its own motion, set dates of expiration for various parts of the 1972 decree. Therefore, except as otherwise stated herein, Plaintiffs' motion for further relief is hereby DENIED.

If no party initiates an appeal within thirty (30) days of date of entry of this order, the Clerk is hereby DIRECTED to once again ADMINISTRATIVELY CLOSE this file.